[No. 15204.    Department One.—May 16, 1894.]

ROBERT NIXON, Respondent, v. SELBY SMELTING AND LEAD COMPANY, Appellant.

Negligence—Fellow-servant—Foreman.—A foreman employed by a corporation, notwithstanding the higher grade of service in which he is employed, is a fellow-servant with other employees in so far as he serves in the places, or with the machinery or appliances prepared and furnished by the corporation; and, for the consequences to fellow-servants of his negligence in the performance of such services in the places, or with the machinery or appliances thus prepared and furnished, the corporation is not responsible.

Id.—Foreman, When Representing Principal—Preparation of Places and Machinery.—In so far as a foreman is authorized and employed to prepare the places in which other servants are to work, or to furnish the machinery or appliances with which they are to work, he represents the corporation; and his negligence in the performance of those services is the negligence of the corporation.

Id.—Liability of Smelting Company—Insufficient Hose—Injury From Acid—Negligence of Foreman.—Where the foreman of the silver-room of a smelting company extemporized a hose for the conducting of hot, diluted acid into a waste-tank, by connecting two pieces of old hose slipped over a piece of lead pipe, over which the two ends met, but which were not tied or fastened to the pipe except by their elastic force,

the smelting company is liable for injury caused by the slipping of the hose from the lead pipe, whereby the acid was discharged upon the shoulder and back of an employee, who had no notice that the hose was defective, or that he exposed himself to danger by using it.

Id.—Contributory Negligence—Conflict of Evidence—Appeal.— Where the evidence is conflicting as to whether the defect in the hose was known to the employee, or was patent to an ordinary observer, a finding thereon in his favor will not be disturbed upon appeal.

Appeal from a judgment of the Superior Court of Contra Costa County, and from an order denying a new trial.

The facts are stated in the opinion.

*Page & Eells,* for Appellant.

The jury disregarded the instructions of the court, and the verdict is against law, and should be set aside. (*Emerson* v. *Santa Clara County*, 40 Cal. 543; *Loveland* v. *Gardner*, 79 Cal. 317, 321; *Declez* v. *Save*, 71 Cal. 552; *Aguirre* v. *Alexander*, 58 Cal. 30.) The evidence is insufficient to justify the verdict, as it shows that the defendant did not supply the hose for the purpose for which it was used. (*Madden* v. *Oriental S. S. Co.*, 86 Cal. 445, 448; *Houston and Texas Central R. R. Co.* v. *Myers*, 55 Tex. 110; *Felch* v. *Allen*, 98 Mass. 572.) The master is not responsible for the consequences of an unnecessary use of implements for purposes to which they are obviously not adapted. (Shearman and Redfield on Negligence, par. 207.) The accident was due to the negligence of the plaintiff's fellow-servant, and therefore the defendant is not liable. (*McDonald* v. *Hazeltine*, 53 Cal. 35; *Fisk* v. *Central Pac. R. R. Co.*, 72 Cal. 38; 1 Am. St. Rep. 22. See, also, *Felch* v. *Allen*, 98 Mass. 572; *Hodgkins* v. *Eastern R. R. Co.*, 119 Mass. 419; *Smith* v. *Lowell Mfg. Co.*, 124 Mass. 114; *Moran* v. *Brown*, 27 Mo. App. 487.) Helm was a fellow-servant of plaintiff. (*Congrave* v. *Southern Pac. R. R. Co.*, 88 Cal. 360; *Stephens* v. *Doe*, 73 Cal. 26; *Collier* v. *Steinhart*, 51 Cal. 116.) Plaintiff was himself guilty of negligence in using the defective hose. (*Sowden* v. *Idaho*

*Q. M. Co.*, 53 Cal. 443; *McGlynn* v. *Brodie*, 31 Cal. 380; *Sanborn* v. *Madera Flume etc. Co.*, 70 Cal. 261.)

John P. O'Brien, for Respondent.

It makes no difference what position the person holds whom the master has delegated as his agent to furnish the machinery, as, in the performance of that duty, such person is the representative of the master, and not a mere co-servant with the one who sustains the injury, and the master is liable for his negligence. (*Beeson* v. *Green Mountain G. M. Co.*, 57 Cal. 20; *Sanborn* v. *Madera Flume etc. Co.*, 70 Cal. 265; *Ingerman* v. *Moore*, 90 Cal. 426.)

Vanclief, C.—Action to recover damages for a personal injury alleged to have been suffered by plaintiff while in the employ of defendant, in consequence of the neglect and failure of defendant to provide proper and safe instruments and appliances with which plaintiff was employed to work.

The trial was by jury, and the verdict and judgment was in favor of the plaintiff for the sum of three thousand eight hundred and sixteen dollars.

The plaintiff was employed to work, and at the time he was injured was working, in a room called the "silver-room," in which silver is separated from lead and gold by dissolving it in hot diluted sulphuric acid, and then precipitating it from the solution. In this process the solution passed through three adjoining tanks, in the last of which the silver is precipitated, and from which, after the precipitation, the hot diluted acid is pumped through a rubber hose into what is called the "waste-tank." While the plaintiff was using this hose in the usual manner it parted at a point between the tanks, and the hot acid was thereby discharged upon the plaintiff's shoulder and back, and scalded him severely. There were four sets of tanks in the silver-room, the waste acid from all of which was pumped into the same waste-tank; but only three of the sets were ordinarily

used at the same time.   On the day of the accident, however, all were used, and the waste acid from all four was to be pumped into the waste-tank at the same time; but there were only three hose in the silver-room through which to pump it.   Under these circumstances, Mr. Helm, the foreman of the silver-room, extemporized a fourth hose by connecting two pieces of old hose that had been lying in the silver-room for a long time, after having been used for conducting steam into the tanks, for which purpose only short hose was necessary.   The two pieces of old hose were connected by slipping one end of each over a piece of lead pipe about eight inches long, so that the two ends met near the middle of the piece of pipe, but were not tied or otherwise fastened to the pipe except by their elastic force, which depended partly upon their quality and partly upon the comparative size of the pipe and the orifice in the hose.   About ten or fifteen minutes after plaintiff had commenced to use this hose, one of the connected pieces slipped from the lead pipe, with the result above stated.

It appears that these pieces of old hose were much worn and eaten by the acid in which they had been formerly used, and it is admitted by appellant that, without having been tightly bound to the lead pipe by a wrapping of wire or twine, they were unfit for the use to which Mr. Helm put them.   The evidence is quite sufficient to justify a finding by the jury, that the plaintiff had no notice that this hose, as constructed and adjusted to the tanks by Mr. Helm, was defective, or that he exposed himself to any danger by using it.   He was not present while Mr. Helm was connecting the two pieces, though Mr. Helm had told him that the hose to be used by him would be made by connecting the two pieces of old hose, and he knew when he commenced using it that it had been so made.   He had not been regularly employed in the silver-room, but only occasionally, during the year preceding the accident.   He had never before used, nor seen used, a spliced hose, but had implicit confidence that the hose prepared and

furnished by Mr. Helm was sufficient for the use intended, and could be safely used.

Mr. Roff was general superintendent of the smelting works, and employed and discharged all the men. Under him Mr. Bee was superintendent of the silver-room. But Mr. Helm was foreman of all the men employed upon the tanks in the process of dissolving and precipitating silver, and was given power not only to direct the men employed in those processes, but to determine what implements and appliances should be used, especially for pumping the acids. As to this, Mr. Bee, on the part of the defendant, testified as follows: "All requisitions for materials and supplies in the silver-room come to me. Mr. Helm makes all requisitions to me, including rubber hose. Mr. Helm is the foreman in charge of those tanks—in the immediate supervision of them. All requisitions for rubber hose that he has made to me have been filled immediately. . . . Mr. Helm is the man who has that matter in charge. . . . . When the tanks are to be drawn off I don't generally superintend; that he does; that matter is always intrusted to him; the matter of drawing off the tanks is a matter he controls by his judgment."

1. It is not questioned that the injury to plaintiff was caused by the negligence of Helm, but appellant contends that Helm was a fellow-servant of plaintiff, and therefore that the negligence of Helm was the negligence of a fellow-servant merely, and not that of the defendant corporation.

It must be admitted that, according to the firmly settled rule of law in this state, Helm, notwithstanding the higher grade of service in which he was employed, was a fellow-servant with plaintiff in so far as he served in the places, or with the machinery or appliances prepared and furnished by the defendant; and, for the consequences to fellow-servants of his negligence in the performance of such services *in the places,* or *with machinery or appliances* thus prepared and furnished, the defendant is not responsible. But in so far as Helm

was authorized and employed to prepare the places in which other servants were to work, or to furnish the machinery or appliances with which they were to work, he represented the corporate defendant, and his negligence in the performance of these services was the negligence of the defendant, for the injurious consequences of which to other servants, without their fault, it is responsible to the same extent it would have been if such places, machinery, and appliances had been prepared and furnished through the immediate agency of Mr. Roff, the general superintendent, or by Mr. Bee, the special superintendent, of the silver-room.

The reason of this is, that it is the duty of employers to provide and furnish suitable and safe appliances, such as rubber hose in this case, with which their employees are required to work; and the law does not permit employers to transfer or shift their responsibility for the performance of this duty to any agent or servant. Of course, they may employ agents or servants to perform this duty, but in case they do so, all negligence in the performance therof is, nevertheless, deemed their negligence, for which they are responsible to a servant or employee thereby injured without contributory negligence on his part.    In cases of this kind the agents of the employer who construct or furnish machinery or appliances to be used by employees are not, *quoad hoc,* fellow-servants, although at the same time they may be fellow-servants in the performance of other services. Perhaps the observance of this dual relation may reconcile some of the apparent inconsistencies of the cases in this state; but, however this may be, the principles and distinctions, as above stated, are expressly recognized in the later cases, and are consistent with all the cases in this state, except, perhaps, the cases of *McKune* v. *California Southern R. R. Co.,* 66 Cal. 302, and *Brown* v. *Sennett,* 68 Cal. 225, 58 Am. Rep. 8, which have been criticised and doubted, if not overruled.

In *Daves* v. *Southern Pacific R. R. Co.,* 98 Cal. 20, one Bresnehan was the foreman of a gang of men, including

James Daves, employed in repairing a section of defendant's railroad, and while thus engaged Daves was killed in consequence of the negligence of Bresnehan; and the question was whether such negligence was to be deemed the negligence of the defendant, or only that of a fellow-servant. Speaking for the court in Bank, Mr. Justice Fitzgerald said:

"This must be determined, not from the grade or rank of the section foreman, but from the *character of the act* performed by him. If the act was one which it was the duty of the employer to perform towards its servants, and one of them negligently performed it, to the injury of another servant in the same common employment, then the offending servant, in the performance of such duty, acted as the representative or agent of his employer, for which the employer is responsible; if it was not, then they were fellow-servants, and the fellow-servant is alone responsible.

"The duties which a railroad corporation owes to its servants, and which it is required to perform, are to furnish suitable machinery and appliances by which the service is to be performed, and to keep them in repair and order; to exercise ordinary care in the selection, and retention, of sufficient and competent servants to properly conduct the business in which the servant is employed, and to make such provisions for the safety of employees as will reasonably protect them against the dangers incident to their employment. The performance of these duties cannot be shifted by it to a servant, so as to avoid responsibility for the injury caused to another servant, by its omission; nor is their negligent performance one of the ordinary risks of the service impliedly assumed by the employee by his contract of employment."

A similar question arose in Department Two of this court, in the case of *Burns* v. *Sennett & Miller*, 99 Cal. 363, in which the alleged negligence was that of failing properly to construct and adjust a strap used as a part of the machinery, in connection with which plaintiff

was working at the time he was injured; and the question was whether the defendants were liable for such negligence.

"And this," said Mr. Justice McFarland, "can be correctly answered only by determining whether, or not, the proper placing and maintaining of the strap was a positive duty which the appellants personally owed to respondent. (*Daves* v. *Southern Pacific R. R. Co.*, 98 Cal. 19; *Baltimore R. R. Co.* v. *Baugh*, 149 U. S. 369. . . . .) And, if in the case at bar the adjustment and maintenance of the said strap was not a duty which appellants owed personally to respondent, then all the gang of men employed by appellants in loading the ship were fellow-servants, and respondent could not recover of appellants for injuries caused by the negligence of one, or more, of said fellow-servants in constructing, parcelling, etc., the strap.

"There is another general rule, however, under which alone, upon the facts so far appearing, respondent can maintain this action—if he can maintain it at all—and that general rule is, that an employer must furnish machinery and appliances reasonably suitable and safe for the employee to do his work.  In such a case the employer is, of course, not bound to insure the employee against any defect in such appliances; but he is bound to use reasonable care in their selection or construction. And, where that rule applies, the duty to furnish such machinery and appliances is one which the employer owes personally to the employed, and he cannot escape that duty by trusting it to an employee who negligently performs it."   The learned justice further says, that this general rule "does not apply to a case where several persons are employed to do certain work, and by the contract of employment, either express or implied, the employees are to adjust the appliances by which the work is to be done."

In *Elledge* v. *National & O. Ky. Co.*, 100 Cal. 282, the defendant was held liable, under this rule, for the negligence of its foreman on a mine, in putting plaintiff in

CII. CAL.—30

an unsafe place in which to do his work. (See, also, *Sanborn* v. *Madera Flume etc. Co.*, 70 Cal. 261, and *Bowen* v. *Chicago etc. Ry. Co.*, 95 Mo. 268.)

2. As to appellant's contention that plaintiff was guilty of contributory negligence, little need be added to what has already been said. The only ground upon which it is claimed that plaintiff was negligent is, that the insufficiency of the hose used by him "was patent to an ordinary observer." But no witness so testified; and plaintiff testified to the contrary, as above stated; and, if the jury believed his testimony, they were justified in finding that he was not guilty of contributory negligence. The most that appellant can justly claim is that the evidence on this issue was conflicting.

3. It is contended that the verdict is contrary to the instructions of the court, and, therefore, is against the law.

This point is founded upon a construction of certain isolated instructions given at request of defendant, which I do not think they will bear when read in connection with all other instructions given.

It is not claimed here that any part of the instructions is erroneous, or inconsistent with any other part; and, after a careful examination and comparison of the eight printed pages of the instructions given, I am unable to perceive that, as a whole, they are inconsistent with the verdict.

I think the order and judgment should be affirmed.

BELCHER, C., and TEMPLE, C. concurred.

For the reasons given in the foregoing opinion, the order and judgment appealed from are affirmed.

GAROUTTE, J., HARRISON, J., VAN FLEET., J.