[S. F. No. 4977. Department Two.—June 11, 1909.]

## MANUEL BOIN, Respondent, v. SPRECKELS SUGAR COMPANY (a Corporation), Appellant.

APPEAL FROM JUDGMENT—RENDITION PRIOR TO AMENDMENT OF 1907— SUBSEQUENT APPEAL—REVIEW OF EVIDENCE.—When a judgment was rendered prior to the amendment of 1907, substituting the word "entry" instead of the previous word "rendition," an appeal from the judgment is governed by the previously existing law, and the evidence may be reviewed thereon, if the appeal is taken within sixty days after its rendition, though taken fifty days subsequent to such amendment.

ID.—"USE" OF BILL OF EXCEPTIONS SETTLED ON MOTION FOR NEW TRIAL. —A bill of exceptions settled to be used on motion for a new trial is *used* on the motion within the meaning of the law as to the "use" thereof on appeal from the judgment.

ID.—GROUNDS FOR RULING NOT PART OF ORDER DENYING NEW TRIAL— PRESUMPTION—REVIEW OF EVIDENCE.—While, in this case, the order denying the motion for a new trial was made upon expressed grounds, which, if correct, would have justified a dismissal rather than the overruling of the motion, yet the motion having been in fact denied, this court must assume that the order was made upon the merits, and statements or recitals in it constitute no part of the showing on which the motion was based, and the record being before the court, it is in a position to pass upon the evidence.

NEGLIGENCE—MASTER AND SERVANT—TEMPORARY EMPLOYMENT OF IN- EXPERIENCED SERVANT—FAILURE TO WARN OF DANGER.—Where a servant regularly employed for other work was ordered to take charge of dangerous work, in respect to which he had no experience, by a managing foreman, who knew the dangerous character of the work, and who gave the servant no warning of the danger from a caustic preparation, from the splash of which he lost an eye, the master is responsible for the resulting injury.

ID.—MANAGER OF DEPARTMENT A VICE-PRINCIPAL.—The manager of a department of a factory who had power to control the plaintiff's immediate superior and to order him to furnish men, including the plaintiff, to work in the tanks, and who prepared the place in which plaintiff was to work, and gave him the implements with which to perform his task, is a vice-principal, and his negligence in failing to warn plaintiff of the danger was the negligence of the corporation defendant as principal.

ID.—ASSUMPTION OF ORDINARY RISKS MATTER OF DEFENSE—PLEADING. —The assumption of the ordinary risks of his employment by the plaintiff is matter of defense which must be pleaded as such, else it cannot be ruled upon.

ID.—KNOWLEDGE OF RISK NOT PRESUMED.—The tank being in a different room from that in which plaintiff had been employed, he could not be presumed to know the manner in which the mixing tank was operated nor the purpose for which it was used, and it cannot be said, as matter of law, that he assumed the risks of his temporary occupation.

ID.—KNOWLEDGE OF SPECIAL DANGER A QUESTION OF FACT FOR JURY.— Whether the plaintiff did have knowledge of the special danger or not was a question of fact for the jury.

ID.—MEANS OF PROPELLING CAUSTIC INTO EYE IMMATERIAL.—It makes no difference what means operated to propel the caustic solution into the plaintiff's eye, provided the plaintiff was not negligent, if the defendant was negligent in failing to instruct the plaintiff with reference to the caustic properties of the liquid.

ID.—EXPLOSION—CONFLICT OF EVIDENCE.—There being a conflict of evidence as to whether there was an unusual explosion or not, the existence of such explosion cannot be assumed as the cause of the injury to plaintiff's eye.

ID.—DUTY OF WARNING NOT DEPENDENT ON KNOWLEDGE OF PLAINTIFF'S IGNORANCE.—The duty of the defendant to warn the plaintiff, who was for the first time placed in the tanks, of the danger in which he was involved, does not depend on the defendant's knowledge of plaintiff's ignorance and inexperience, it being the undisputed fact that he had no previous opportunity of knowledge.

ID.—ABSENCE OF ERROR IN INSTRUCTIONS.—*Held*, that there was no error in the instructions of the court, taken together as a whole, which stated correct rules of law for the guidance of the jury.

APPEAL from a judgment of the Superior Court of Monterey County and from an order denying a new trial. B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Dougherty & Lacey, for Appellant.

F. P. Feliz, and Thos. Renison, for Respondent.

MELVIN, J.—Plaintiff had been employed in defendant's beet-sugar factory in Monterey County. He was assigned first to work in the press room, where his duty was to shake out of the press some sort of material after it was formed into cakes or slabs. He testified that he did not know what the cakes contained and that he did not handle them. No one told him, he said, that there was any danger in handling the substance

which came from the press, and he testified that he knew absolutely nothing about the caustic properties of the material composing the cakes. After working at the press for about two weeks plaintiff was ordered by Mr. Hennings, foreman of one of defendant's departments, to clear out the tubes of a mixing tank which had been used to mix syrup, water, and lime before the product of such mixture was pressed into cakes or slabs. He was not informed by Mr. Hennings, or by any of the defendant's agents, of any dangers incident to his new employment and he did not know nor was he informed that he was working in a tank in which there was a caustic solution containing lime. He was annoyed while working in the tank by the sifting of lime from a bolter above his head and was advised by Mr. Hennings to wear a handkerchief around his neck and cloths around his wrists. He was furnished with goggles and instructed to wear them. His particular work consisted in boring through the hardened substance which had accumulated within the tubes in the mixing tank, and thus cleaning the tubes so that they might be used again for their intended part in the process of mixing. There was some liquid in the tubes and at the bottom of the tank. After the plaintiff had been employed at this task for two or three days, and when he was about to pull the augur out of one of the tubes, after boring through the hardened substance, some of the liquid from the tube, impelled either by an explosion or by some other force, was blown or splashed into one of his eyes. As a result he lost the sight of the injured eye. Judgment for five thousand dollars damages was given in behalf of plaintiff. From this and from the order denying defendant's motion for a new trial, defendant appeals.

Appellant's first contention relates to the denial of its motion for new trial. When that motion came on for hearing in the superior court, all of the parties being present, the said motion was submitted without argument and was taken under advisement by the court. Nearly a month later the court denied the motion, reciting in the order of denial that "no oral statement whatsoever was made to the court on the grounds or particular points upon which said motion should be or was based, and that the court's attention was not called to any instrument or document on file in said case as containing grounds upon which to base said motion, and that the only action taken by the

attorneys for the defendant in said matter upon the hearing
of said motion being to state to the court that the same was
submitted without argument."

The reasons expressed in the above quotation were given by
the court as the only bases for the denial of the motion.  Ap-
pellant's bill of exceptions contained a copy of the notice of
intention to move for a new trial, and there was also a request
for a new trial contained in the bill of exceptions itself.  Under
these circumstances was the court justified in refusing to
consider and determine the motion for a new trial upon its
merits?   An examination of the bill reveals the fact that it
contains a very full statement and specification of the asserted
insufficiency of the evidence to justify the verdict, and that it
also directs the court's special attention to the alleged excessive
award of damages.  The grounds for the motion for new trial
sufficiently appear in the bill of exceptions from the specifica-
tions therein contained to enable the court intelligently to
pass upon the motion.  It is true that no oral reference was
made to the bill of exceptions, but it was on file and had been
settled by the court and contained a copy of the notice of
motion specifying in full the grounds upon which the motion
was based and the statement that the motion would be founded,
in part, on the settled bill.   Section 661 of the Code of Civil
Procedure provides that the bill of exceptions "used on the
hearing" shall constitute a part of the record on appeal, and
it has been held in Nevada that "whenever a statement is pre-
pared and settled it is 'used' within the meaning of the word
in the statute."   The statute of Nevada upon this subject is
practically the same  as our section 661 of the Code of Civil
Procedure, and in construing the section of the Nevada law
the supreme court of that state says:  "When it speaks of the
statement being used it means employed as the record of the
proceedings upon which the motion is grounded."   (*State* v.
*Central Pac. Ry. Co.*, 17 Nev. 259, [30 Pac. 889].)   In that case
the failure of the moving party to appear at the hearing was
held not to be an abandonment of the motion for a new trial,
and a similar rule was announced in *Carder* v. *Baxter*, 28 Cal.
99, and in *Chabot* v. *Tucker*, 39 Cal. 434.   There is nothing
in *Williams* v. *Hawley*, 144 Cal. 100, [77 Pac. 762], at variance
with the views here expressed.  Indeed, that case supports
them.   While it is true that an oral motion was made in that

case, said motion merely directed the court's attention to the
bill of exceptions, the notice of motion and other papers; and,
while the notice of motion, not being a part of the record,
could not be considered by this court in determining the
grounds of the motion which was made in the court below,
those grounds did appear with particularity in the bill of
exceptions which was a part of the record, and this court was,
therefore, fully apprised of all the grounds stated in the notice
of intention. If, in that case, the motion had been submitted
without argument, we see no reason why the grounds of appel-
lant's motion, appearing fully in the record as they did, could
not have been as fully considered by the trial court and re-
viewed by the supreme court as they were, in view of the
purely formal oral statement made by appellant's counsel upon
submission of the motion without argument or presentation of
points of law for the assistance of the court. While in this
case the order denying the motion was made upon expressed
grounds which, if correct, would have justified perhaps the
dismissal rather than the overruling of the motion for a new
trial, the fact remains that the motion was denied, and we must
assume that the order was made upon its merits. "The order
simply indicates the action of the court and not the showing
upon which such action was based. Therefore statements or
recitals in the order as to the showing made constitute no part
of the order." (*Power* v. *Fairbanks,* 146 Cal. 614, [80 Pac.
1076].) The record being before us we are in a position to
pass upon the matters therein presented and shall do so.

Respondent's attorneys have presented an elaborate argu-
ment in which this court is urged to omit from consideration
the question of the alleged insufficiency of the evidence upon
the ground that the appeal from the judgment was not taken
in time to permit such review. The notice of appeal from the
judgment was filed 57 days after the rendition of the judgment
and 50 days after section 939 of the Code of Civil Procedure
had become effective as amended by substituting the word
"entry" for the word "rendition." There is no saving clause
in the amendment of 1907. Respondent's counsel contend that
the former statute was repealed and at the time of the filing
of the notice of appeal there was no statute upon the subject
applicable to this case; in other words, that appellant could
only take advantage of the old section 939 of the Code of Civil

Procedure, by perfecting its appeal between the time of the rendition of judgment and the date upon which the new section 939 of the Code of Civil Procedure, went into effect. It is conceded that this theory is in conflict with that announced in *Pignaz* v. *Burnett*, 119 Cal. 157, [51 Pac. 48], and *Melde* v. *Reynolds*, 120 Cal. 234, [52 Pac. 491], but respondent regards those cases as opposed to the later decisions. In view of the conclusion we have reached, however, by following here the doctrine of those cases, it becomes unnecessary to pursue the matter further.

There is evidence which justified the conclusion that Mr. Hennings was a vice-principal of the defendant corporation. Mr. Hennings had charge of that part of the factory known as the "Steffens Plant" or department. He gave orders to Mr. Clathworthy, plaintiff's immediate superior, and directed the latter to furnish men for work in the tanks. The manager of a department is a vice-principal. Mr. Hennings prepared the place in which plaintiff was to work and gave him the implements with which to accomplish his task. In this he was clearly a vice-principal representing the corporate defendant. (*Nixon* v. *Selby Smelting Co.*, 102 Cal. 463, [36 Pac. 803].)

The work being performed by plaintiff at the time of his injury was, in its very nature, of a temporary character and was not done by him in the course of his usual and ordinary employment. He was taken from his place at the press by Mr. Hennings and, as he testified, put at work in the tank without any warning with reference to the dangers involved. Defendant knew of the highly caustic character of the solution in the tank. Of this, plaintiff testified he was ignorant and he did not even know, he said, that the cakes handled by him at the press were composed of material taken from the mixing tank. The tank was in a different room from that in which plaintiff's usual work was done. He could not, therefore, be presumed to know the manner in which the mixing tank was operated nor the purpose for which it was used. He had never been in the tank until Mr. Hennings sent him there, as the tubes had never been clogged before. Under these circumstances we cannot say that, as matter of law, he assumed the risks incident to his temporary occupation. Whether he did have knowledge of such special danger or not was a question of fact for the jury. (*Daubert* v. *Western Meat Co.*, 135 Cal.

144, [67 Pac. 133].) It was clearly the duty of defendant to warn him of the dangers attending the work in the tank, and the failure to give him such admonition constituted negligence upon the part of the appellant.

Appellant invokes the rule announced in *Bone* v. *Ophir Silver Min. Co.,* 149 Cal. 294, [86 Pac. 685], that while a master must inform the servant of latent and extraneous dangers, this applies only to those perils of which the employer has, or by the exercise of ordinary care should have, knowledge. It is urged upon us with much force that, there never having been an explosion in the tank prior to the time of plaintiff's injury, defendant could not be charged with the duty of warning any one against such an explosion. This pre-supposes an explosion, as the means whereby the mordant liquid was projected into Boin's eye, but there is a conflict of evidence upon this point. It really makes no difference what means operated to propel the solution into plaintiff's eye (provided, of course, plaintiff was exercising due care and caution), if the defendant was negligent in failing to instruct its employee with reference to the caustic property of the liquid. It may be that the small quantity of lime, sifting from the bolter above plaintiff's head, became mixed with the liquid in one of the tubes and caused an explosion, or the liquid may have splashed because of the insertion of the augur into the tube or by reason of suction caused by the withdrawal of the hardened substance at the end of the tube. There are several ways in which the fluid may have been set in motion, but the negligence of defendant consisted in its failure to give such warning as would have permitted Boin to exercise the right of consenting or refusing to work in a tank containing a dangerous chemical compound. (See *Baxter* v. *Roberts,* 44 Cal. 187, [13 Am. Rep. 160].)

Certain instructions are attacked by appellant. Instruction numbered 13 is as follows:—

"If you believe from the preponderance of the evidence in this case that the sight of one of plaintiff's eyes was injured or destroyed on the eighth day of October, 1905, while plaintiff was in the employ of the defendant and in the discharge of his duties under such employment, and while in the exercise of due care and caution on his part, and that the same was so injured or destroyed by any substance upon which plaintiff

was required by the defendant, or those acting under its
authority, to perform labor in the course of his said employ-
ment, and it further appears to your satisfaction that such
injuries were caused by the caustic or corrosive qualities of
such substance, if it had such qualities, and that such qualities
were known to the defendant, or could have become known to
it by the use and exercise of ordinary care, and that said
defendant failed and neglected to warn or caution plaintiff of
such qualities, and that the same were not known to the plain-
tiff or obvious to him, and that the neglect of the defendant
to warn or caution plaintiff thereof was the proximate cause
of such injuries, then I instruct you that you must render a
verdict for the plaintiff."

Appellant's first criticism of this instruction calls attention
to the omission of all reference to the danger of explosion. This
has been answered, we think, by the discussion in a preceding
paragraph. Supposed error in the instruction is next predi-
cated upon the omission of the qualification that the danger
from the caustic properties of the substance in the tank was
not included in the ordinary risks of the employment. There
was no defense based upon the claim that the injuries were
due to ordinary risks of employment. Such defense should be
specially pleaded. (13 Ency. of Plead. and Prac., p. 914.)
Besides, all of the evidence on the subject tended to show that
the employment was of a temporary character and there was
no contradiction of this point. If such qualification had been
necessary, however, the jury was given, in later instructions,
the rules with reference to the assumption of usual risks of
one's ordinary employment.

The next criticism of this instruction is that it omits the
element that defendant knew, or in the exercise of reasonable
care should have known, of the plaintiff's alleged ignorance.
Such proviso was unnecessary for several reasons: 1. The work
being temporary, perilous, and outside of the ordinary occupa-
tion of Boin, it was defendant's duty to warn him, whether or
not his ignorance was known to defendant; 2. The undisputed
facts show that plaintiff had no opportunity of learning of the
contents of the tank before entering it; and 3. Conceding that
the omission of this qualification was erroneous, the jurors
were subsequently instructed fully on this subject. There are
other criticisms of this instruction, but they are either without

merit or are met by subsequent declarations, in the charge, of correct rules of law for the guidance of the jury.

There are numerous other specifications of alleged error in the charge to the jury and the court's refusal to give certain proposed instructions. We have carefully examined all these matters and do not find any substantial error which would justify a reversal of this case.

It follows that the judgment and order should be sustained and it is so ordered.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.