[L. A. No. 4711.  In Bank.—March 14, 1917.]

UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents; MARIA ROBUSTO MAFFIA, Applicant.

[L. A. No. 4712.  In Bank.—March 14, 1917.]

UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents; VICTOR ZANOTTI et al., Applicants.

Workmen's Compensation Act — Burden of Proof — Absence of Willful Misconduct. — In a proceeding before the Industrial Accident Commission to recover compensation under the Workmen's Compensation Act, the claimant is not required to affirmatively establish the absence of willful misconduct on the part of the injured or killed employee.

Id. — Willful Misconduct a Matter of Affirmative Defense. — Willful misconduct on the part of the injured employee barring the right to compensation is a matter of affirmative defense in such a proceeding, and is not jurisdictional in the sense that its absence must be affirmatively established by the claimant.

Id.—Employee in Winery—Asphyxiation While Cleaning Tank— Failure to Make Test.—An employee in a winery, who was killed by asphyxiation while cleaning the interior of an empty wine-tank, was not guilty of willful misconduct in entering the tank without testing the atmospheric conditions therein, where no rules of the employer prohibited him from so doing, and there was no evidence that he knew of a general custom to make such a test before entering a tank.

Id. — General Custom to Make Test of Tank — Employee Knowing Custom — Insufficient Evidence of Willful Misconduct. — Where an employee had knowledge of the general custom to make such a test before entering an empty tank, his mere presence therein, in a dying condition, does not prove circumstantially that he was guilty of willful misconduct in entering it, where the circumstances surrounding the accident admit of a number of possible explanations not merely to excuse but logically to account for his being there, among others that he was overcome while going to the aid of a coemployee who was already in the tank and being asphyxiated therein.

Id.—Compensation Insurance—Release of Insurance Carrier—Appointment of General Manager by Insured Partnership.—An insurance company carrying compensation insurance for a partnership is not released from liability for injuries to the employees of the firm, by the fact that the partners, as individuals, had given a general power of attorney to one of their creditors, authorizing him to act as general manager of the business and to receive and control the funds of the copartnership until he and certain other creditors should be paid.

APPLICATIONS for Writs of Certiorari to review awards of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Gurney E. Newlin, and H. W. Kidd, for Petitioners.

Christopher M. Bradley, for Respondents.

MELVIN, J.—These proceedings in *certiorari* are taken to review the action of the Industrial Accident Commission

in awarding compensation to the dependents of Daniele Maffia and Roberto Zanotti, who were asphyxiated in a wine-tank while they were employed at a winery in Los Angeles. Maffia was a foreman. Zanotti was a workman under Maffia's direction.

The Industrial Accident Commission found that the men were working "upon certain wine-tanks which were required to be cleaned after emptying them of wine." Regarding the usual manner of doing that kind of work the finding of the commission was as follows: "The custom in cleaning said tanks was for one person to work inside and one outside the tank, and that it was forbidden and contrary to the custom then in use for two persons to work inside of a tank at once, because of the danger of asphyxiation.· That the custom of said employees, Maffia and Zanotti, was for Maffia to work outside the tank and Zanotti inside, while cleaning it. That there were no eye-witnesses to the accident, but that when discovered both Maffia and Zanotti were found inside of the tank they had been cleaning, in a dying condition, and that death resulted within a few minutes after their being removed." There were further findings in the Maffia matter in the following language: "That it is proper and customary among wine-makers before entering a vat to clean it, to test the atmosphere in the vat by a lighted candle, to determine the presence of poisonous gases. That the deceased Daniele Maffia was well acquainted with such custom and the necessity for its exercise. That no rules had been issued by the employer requiring such test to be made, and that there is no evidence to show that the deceased Roberto Zanotti had ever been instructed in the necessity of making such test. That there is no evidence to show whether or not such candle test was made by either of the deceased employees prior to entering the tank in which the accident occurred. That the evidence is, therefore, insufficient to establish that the death of the said Daniele Maffia was caused·by willful misconduct. That no charge of intoxication contributing to said death is made by the defendants herein." There were findings to the same effect in the case of Zanotti.

Petitioner's first contention is that recovery of compensation should have been denied because of the willful misconduct of the two men, but as a preliminary to a discussion of that point, counsel for petitioner insist that proof of inno-

cence of willful misconduct is one of the burdens placed upon all claimants before the Industrial Accident Commission. Counsel rely in part upon the following language found in *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180–186, [9 N. C. C. A. 466, 149 Pac. 35–38].

"The question whether the accident was caused by the 'willful misconduct of the employee' is one that goes to the jurisdiction of the board, and is therefore open to inquiry on *certiorari.* Under the terms of the act, the liability exists only where there is a concurrence of certain conditions, one of which is the absence of such willful misconduct." In using the language above quoted, Mr. Justice Sloss, who prepared the court's opinion, was not discussing the *burden of proof* in proceedings before the Industrial Accident Commission, but he was disposing of the contention that the finding of the commission upon the question of willful misconduct of the employee was not reviewable by this court. He concluded that as a matter going to the jurisdiction of the Industrial Accident Commission it was subject to examination on *certiorari.* But the decision does not hold, nor does any authority to which our attention has been called, that innocence of willful misconduct on the part of the injured or killed workman must be affirmatively established in the proceeding before the commission. If this were the rule the petitioner would be compelled, in every case, to establish all of the rules passed by the employer for the safety of the employees, and then prove that no one of these regulations had been broken by the workman killed or injured in the alleged accident. It is contended that the very definition of the right of an injured workman to receive compensation or of the surviving dependents of a deceased employee to obtain an award provided by law in proper cases depends upon the absence of willful misconduct. In this behalf *McDougald* v. *Boyd,* 172 Cal. 753, [159 Pac. 168], is cited as authority for the proposition that a statute may prescribe proof of a negative as an essential part of a plaintiff's cause of action. That was a tax proceeding—one *in invitum*—and it was held that, as the statute did not impose a tax generally upon all transfers of property made in contemplation of death, but only upon those made "without valuable and adequate consideration," the burden was placed upon an officer seeking to collect an inheritance tax of showing that

a transaction involving such transfer was in fact without sufficient consideration. The matter at bar is quite different. We are here considering *not* a proceeding *in invitum,* but one in which the law contemplates a fair weighing of all of the facts and the rights of the parties with as little formality as is compatible with justice. "Willful misconduct," in a proceeding such as this, like "contributory negligence" in a damage case, is matter of affirmative defense. While the question of "willful misconduct" goes to the jurisdiction of the Industrial Accident Commission in the sense that no award may be made lawfully by that tribunal when the employee's "willful misconduct" has contributed to his injury, nevertheless the commission has the right to hear and determine all controversies between employers and persons holding relatively the positions occupied by the decedents' petitioners and the firm that employed the men who were killed. In that sense the matter of "willful misconduct" is not jurisdictional but purely defensive. The rule has been so declared in *British Columbia Sugar Refining Co.* v. *Granick,* 44 Can. Sup. Ct. Rep. 105, [2 N. C. C. A. 852]. This court has held that while the burden of proof in a matter before the Industrial Accident Commission is upon the applicant, it is not necessary that every possibility of death by other than accidental means should be negatived. (*Rideout Co.* v. *Pillsbury,* 173 Cal. 132, [159 Pac. 435, 436].)

The circumstances surrounding the death of Maffia and that of Zanotti do not show whether or not they or either of them made any test of the atmospheric conditions in the tank before entering. For all that appeared in the evidence they may have made tests and may have been satisfied in their own minds that they might safely venture within the tank; or it may have been that one of them entered the tank, was overcome by the fumes, and that his companion seeking to rescue him was also suffocated. These are all matters purely of speculation. But even if it be conceded that going into the wine-tank under the circumstances revealed was negligence of a high degree, that does not help us in the solution of the problem presented to us. Negligence or lack of it is not the determinative factor in a proceeding before the Industrial Accident Commission. (*Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180–189, [149 Pac. 35, 9 N. C. C. A. 466].) Willful misconduct involves something more than negligence

and it does not even include every violation of a rule.  (*Casey* v. *Humphries* [1913], 6 B. W. C. C. 520.)  According to the finding of the commission, which is supported by the evidence, there had been no rules formulated by the employer prohibiting an employee from entering a tank or vat before testing the atmosphere therein with a lighted candle.  True, it was the custom, as found by the commission, to make such tests, but Zanotti, in the absence of proof that he knew of such general practice, could not even be charged with negligence in entering the suffocating atmosphere without employing the common preliminary precaution.  (*Boin* v. *Spreckels Sugar Co.*, 155 Cal. 612, [102 Pac. 937].)  Much less might he be charged with willful misconduct.  Regarding Maffia the facts were different.  He was a man of experience, and we could perhaps construct a hypothetical case in which such a workman might be held guilty of willful misconduct in the violation of a custom crystallized by long and universal practice into a rule, although not formulated by the employer into a written precept or a spoken command; but we cannot say that under the circumstances presented by this record the commissioners erred in finding the evidence insufficient to establish such misconduct on Maffia's part as ought to defeat the efforts of his surviving dependents to obtain compensation for his death.  It might have been that Maffia was overcome after going to the aid of Zanotti, in which event he would have been engaged in his employer's business. (*Dragovich* v. *Iroquois Iron Co.*, 269 Ill. 478 [109 N. E. 999, 10 N. C. C. A. 475]; *Waters* v. *William J. Taylor Co.*, 218 N. Y. 248, [112 N. E. 727].)  Indeed, a number of explanations are possible not merely to excuse but logically to account for Maffia's being in the tank; and we cannot say therefore that his mere presence therein and in a dying condition proves circumstantially his guilt of willful misconduct.

The two workmen were employed by the Aquilino-Lagomarsino Wine Company, a partnership for which petitioner wrote compensation insurance.  Petitioner disclaims liability on the ground that the partnership business had been assigned for the benefit of creditors, and that the men who were killed had ceased to be employees of the copartnership.  The commission found that one week prior to the accident F. A. Lucas had been appointed general manager of the business under a general power of attorney authorizing him so to act as man-

ager and to receive and control the funds of the copartnership; that neither in form nor substance was this transaction a sale or transfer of the partnership business to Lucas, but was placing partnership affairs and assets under his control until Lucas and certain other creditors should be paid; and that Aquilino and Lagomarsino at all times remained the owners of the partnership business and the employers of Maffia and Zanotti. These findings are supported by the evidence. The alleged assignment was not made by the copartnership, but by the partners individually. It was a private arrangement which could not be binding upon the workmen employed in the winery. There was no pretense that it was made in accordance with the statutes, section 3457 of the Civil Code et seq. The mere transmission of the custody and management of the business to Lucas was not a sale, a transfer, or an assignment for the benefit of creditors.

No other matters discussed in the briefs require attention. The awards are affirmed.

Henshaw, J., Sloss, J., Shaw, J., Lorigan, J., Lawlor, J., and Angellotti, C. J., concurred.