[L. A. No. 2454. Department Two.—December 29, 1910.]

BOH H. BROWN, Respondent, v. SHARP-HAUSER CONTRACTING COMPANY (a Corporation), Appellant.

MASTER AND SERVANT—ASSUMPTION OF RISK—WORKING IN DANGEROUS PLACE.—Where a person undertakes to work in a place where conditions of danger are liable to occur in the ordinary prosecution of the work, and he has knowledge of such dangers, or his facilities for seeing or discovering them are just as good as those of his employer, and he undertakes the employment, or continues in the work

with the knowledge or opportunity for ascertaining those dangers, he is deemed to assume the perils incident to the employment and cannot look to the employer for indemnification for injuries resulting therefrom.

ID.—DANGER NOT OBVIOUS—KNOWLEDGE BY EMPLOYER OF DANGER.— This rule of assumption of risk has no application where the dangers are not obvious, where they are known to the employer and not to the employee, or where, in the exercise of ordinary care, the conditions of peril might have been discovered and removed by the employer.

ID.—EMPLOYER'S DUTY TO FURNISH SAFE PLACE FOR WORK.—It is the duty of an employer to furnish a reasonably safe place in which the employee may perform the work in which he is engaged, and to use ordinary care to keep the place reasonably safe so that the employee may not be exposed to danger. He is not an insurer of the safety of the employee, the measure of his obligation being to use ordinary care in seeing that the place of work is safe in the first instance, and to employ the same degree of care to keep it such.

ID.—EXCAVATING DEEP CUT—LOOSENING EARTH AT TOP OF HILL—DUTY OF EMPLOYER TO INSPECT.—Where in the process of constructing a deep cut through a hill, a dangerous condition was liable to arise at the top as the result of blasting, which would not be observable by the workmen at the base of the cut, and which could only be disclosed by inspection at the top of the hill, it was the duty of the employer, in the exercise of ordinary care towards the safety of his employees, to have made such inspection. If, in making the inspection, the condition of danger was discovered by the general foreman in charge of the work, it was the duty of the employer to have removed the danger. If he fails to do so, and an injury results to an employee working at the base of the cut, as the result of a slide of earth from the top, the employer is liable therefor.

ID.—INSTRUCTION—FAILURE TO OFFER MOST SATISFACTORY EVIDENCE.— An instruction to the jury, in the language of section 2061 of the Code of Civil Procedure, "that if weaker and less satisfactory evidence is offered, when it appears that stronger or more satisfactory was within the power of the party, the evidence offered should be viewed with distrust," although subject to criticism as invading the province of the jury to weigh the evidence, enunciates a mere commonplace rule, and the giving of it will be deemed to be without prejudice, when there was nothing in the evidence offered to which the rule could apply.

ID.—WARNING INEXPERIENCED SERVANT—DUTY TOWARDS EXPERIENCED SERVANT—ASSUMPTION OF RISK.—While it is the duty of the master to inform an inexperienced servant of any danger to be apprehended in conducting a particular employment in which he is engaged, and of which the master has knowledge, but which may not be known or understood by the servant, his paramount duty to the servant, whether inexperienced or experienced, is to use due care and dili-

gence to keep the place of employment in safe condition so that such servants may not be exposed to unusual and unreasonable risks. A servant who has had experience in an employment, and has notice and knowledge of the dangers incident to the ordinary course of the work, and who undertakes the employment or continues to perform it with the knowledge, assumes the risk of injury.

Id.—Duty of Master with Respect to Unusual Risks.—The fact that a servant is experienced, or that an inexperienced servant has notice of perils ordinarily incident to the employment, does not relieve the master of the duty to protect both from risks which are not natural and ordinary incidents to the conduct of the business, and which could have been removed by the exercise of due diligence.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

M. E. C. Munday, for Appellant.

Gavin W. Craig, and C. H. Slease, for Respondent.

LORIGAN, J.—This is an action for damages for personal injuries, and from a judgment in favor of the plaintiff, entered upon the verdict of the jury, and from an order denying its motion for a new trial defendant appeals.

Under contract with the Santa Fe Railroad Company the defendant was engaged in cutting down a hill along the railroad line near Orange in Los Angeles County. The work of removing the hill was done by blasting down the bank and using a steam shovel to load the loosened earth upon cars which conveyed it away. The steam shovel was propelled by a traction engine operating over a bed of ties laid along the base of the hill. When the earth loosened by one blast was removed, the steam shovel was moved back and another blast put in the hill to loosen the rock and earth, which being done, the traction engine was again moved forward, the dirt at the base of the hill cleared away, and the ground leveled so that additional ties might be laid ahead upon which to operate the engine and shovel, in removing the rock and earth loosened by the last blast.

The plaintiff was, with others, employed by the defendant, to level the earth and lay down the ties as occasion required ahead of the traction engine and shovel, such employees being known as "pitmen," and plaintiff had been in the employ of the defendant in such capacity some ten days prior to the accident. He had never worked as a pitman, although he had done shovel work theretofore on the Santa Fe and other railroads.

On December 21, 1908, the bank of the hill had been blasted down, leaving a steep bank, nearly perpendicular, and from 65 to 75 feet high. In the morning, two days afterwards, plaintiff with others, was engaged in their regular occupation of leveling the ground and laying the ties at the base of the hill for the operation of the steam shovel. While so engaged the assistant foreman of defendant took the general foreman to the top of the steep bank below which the plaintiff and the others were working in order that he might examine it. Before doing so the assistant had himself gone up and inspected the top of the cut and had found cracks, from a foot to eighteen inches wide in the bank, about ten feet back from the face of the cut, and running parallel with the face of the bank and pretty deep down, but not noticeable from the bottom of the hill where the plaintiff and the others were working. The assistant foreman considered the conditions on top pretty bad, and did not deem the bank safe as against a cave, and so called the general foreman, Sullivan, to inspect it. The latter did so and said "she looks pretty bad," but "we will take a chance at her." He instructed the assistant to remain on top to watch the bank and warn the men below should a slide commence, while he went below to move the shovel through. The condition of the bank at the top of the cut was not noticeable from the bottom of the hill where plaintiff and the others were working; from that point the face of the cut seemed to be safe. The condition at the top was not known or observable to plaintiff, or, as far as the evidence discloses, to any one save the general foreman and the assistant foreman of defendant who inspected it.

When the general foreman came down from the top, and reached the place where plaintiff and the other pitmen were working, he testified that he told them to be careful and look out for the bank. No warning of any particular danger was

given them; they were not informed of the condition of the bank as he had discovered it.   Plaintiff testified that the foreman gave them no warning whatever, but that as the latter came down from the top, and approached near where the men were working, plaintiff asked him if the bank was dangerous, to which he made no reply but walked over to where a work train was stationed.   Just about this time a vast body of rock and earth from near the top of the bank where the ground was crevassed was suddenly precipitated, a sheer fall of about fifty feet, upon the pitmen below, grievously and permanently injuring the plaintiff.   It was in evidence further that in blasting banks crevassed conditions such as were found on the top of the hill would sometimes occur; that after a blast the usual and proper course before moving up the steam shovel was to examine the bank and see if it was safe to work under; that when there is any apparent danger of caving these conditions of danger are removed; men with bars are directed to loosen any dangerous mass of earth, either on the face or top of the hill, and cave them down the bank; sometimes small blasts are put in to effect the purpose.

Various grounds are urged for a reversal.   It is first insisted that the evidence is not sufficient to sustain the verdict, the claim being that the injury sustained by the plaintiff from the fall of the mass of earth was one of the risks ordinarily incident to the business in which he was engaged, and which he assumed when he took the employment.   This is the only point made in regard to the evidence.

The rule as to the assumption of risk by an employee, has, however, no application under the evidence in this case.

It is the duty of an employer to furnish a reasonably safe place in which the employee may perform the work in which he is engaged, and to use ordinary care to keep the place reasonably safe so that the employee may not be exposed to danger.   It is true that the employer is not an insurer of the safety of the employee.   The measure of his obligation is to use ordinary care in seeing that the place where the work is being done is safe in the first instance, and to employ the same degree of care in continuing to keep it safe.   No liability is cast upon the employer to indemnify an employee for injuries which are the ordinary risks of the business in which he is employed.   Where a person undertakes to work in a place

where conditions of danger are liable to occur in the ordinary prosecution of the work; where he has knowledge of such dangers, or his facilities for seeing or discovering them are just as good as those of his employer, and he undertakes the employment, or continues in the work with the knowledge or opportunity for ascertaining those dangers, he is in law deemed to assume the perils incident to the employment, and cannot look to the employer for indemnification for injuries resulting therefrom. But this rule of assumption of risk has no application where the dangers are not obvious; where they are known to the employer and not to the employee, or where, in the exercise of ordinary care the conditions of peril might have been discovered and removed by the employer.

In the case under consideration, while in the ordinary transaction of the work a dangerous condition at the top of the slope might sometimes occur, after the face of the hill was blasted, this was not obvious to the men working at the base. No inspection or observance from that point could have disclosed it. It was not the duty of the plaintiff to go to the top of the hill and discover this condition. A dangerous condition being liable to arise there from the blasting, which would not be observable by the workmen at the base, and which could only be disclosed by inspection at the top of the hill, it was the duty of the defendant, in the exercise of ordinary care towards the safety of its employees, to have made such inspection. This duty was recognized by it, and for the purpose of discharging it and determining whether the top of the hill was safe or not, its general and assistant foreman both made an inspection of it and both discovered that its condition was such as to be an impending danger to the men below. The plain legal duty of the general foreman, as representing the defendant in the discharge of his duty to its employees, was to have removed the danger. This could have been readily accomplished by prying the mass down the bank with bars. Instead of doing this the foreman concluded "to take a chance." The law does not permit an employer to take any chances as to the safety of his employees. As disclosed here the defendant neglected to take the ordinary care which the law requires shall be exercised in providing a safe place for employees to work. It was gross negligence for defendant to take the chances, and they having gone against it, the defendant was

clearly liable to plaintiff for the result of the injuries suffered by him thereby.

There is nothing in *Thompson* v. *California Const. Co.*, 148 Cal. 35, [82 Pac. 367], cited by appellant, sustaining its claim that the evidence in this case showed an assumption by plaintiff of the danger of injury by a fall of the bank. In the case cited the danger of a fall of rock from the face of the quarry was as obvious to the employee as to the employer, and it was not claimed there that the defendant had not taken proper precaution to prevent the rock from falling. In the case here, danger from the fall of the bank was not only not known or obvious to the plaintiff, but its dangerous condition was known to the defendant, and no precautions were taken by it to prevent its fall after discovery of the conditions. In the case cited, under the evidence, the rule of assumption of risk was properly applied. It is inapplicable here as the facts show that the dangerous condition was solely known to the defendant, and this being true, it was its absolute duty to have protected the plaintiff against the danger by removing it.

Complaint is made of various instructions to the jury.

The court read to the jury some of the subdivisions of section 2061 of the Code of Civil Procedure, which that section provides are to be given to a jury "on all proper occasions." Appellant complains particularly of the giving of that subdivision which declares "that if weaker and less satisfactory evidence is offered, when it appears that stronger or more satisfactory was within the power of the party, the evidence offered should be viewed with distrust."

This instruction, like some others contained in the code section referred to, has been criticised by this court as being an intrusion on the province of the jury to exclusively determine the weight and effect to be given to the evidence in any case presented to them, and the giving of it is particularly deprecated in criminal cases. (*People* v. *Cluff*, 122 Cal. 589, [55 Pac. 407].) In that case the advisability of not giving it at all in criminal cases is suggested. A similar suggestion is applicable to civil cases. As formulated in the code subdivision the instruction is but a mere commonplace rule which an intelligent jury will recognize, and apply when the evidence in the case calls for its application, without any suggestion by the court on the subject. This, however, furnishes no reason

why the giving of it should be held harmless whenever the existence of a proper occasion for giving it is questioned, any more than it should be held error always to give it because it may be an invasion of the province of the jury. Like other instructions in a case, error in giving it cannot be insisted on unless it appears to have been prejudicial to the party complaining of it. Nothing of the kind appears here. The jury were told that they were to view with distrust the offer of weaker or less satisfactory evidence when it appeared that stronger or more satisfactory evidence was "within the power of the party" to produce. It was shown in evidence by the defendant, in connection with the testimony of the foreman on the matter of warning the plaintiff and the four others, that defendant had endeavored to obtain the presence of these four men as witnesses but could not find them. Hence the evidence showed that the conditions under which the jury, on the theory of the appellant, might have applied the instruction so as to distrust the testimony of the foreman about the warning, did not arise in the case. It did not appear that it was within the power of the defendant to produce these other witnesses, but on the contrary it actually appeared that it was not in defendant's power to do so.

The court instructed the jury that "It is the duty of the master to give warning to an inexperienced servant of unusual and hidden dangers of which the master is aware, and of which the servant to the master's knowledge is ignorant. Therefore, if you find from the evidence that the plaintiff herein was inexperienced as a pitman, and the defendant was aware of the dangerous condition of the bank, and knew of plaintiff's inexperience, it was defendant's duty to warn plaintiff of such dangerous bank." There is no question but that the general principle of law was correctly given in this instruction, but it is claimed that it was inapplicable because there was no evidence that plaintiff was inexperienced about the dangers to be apprehended in the work to which he was assigned, or, if he was, that the defendant had any knowledge of it. Whether this is true or not we do not consider of any importance.

Under the unquestioned evidence in the case the instruction was more favorable to the defendant than it was to the plaintiff, as the right of the plaintiff to recover should not

have been limited, under the evidence in the case, upon the fact whether he was experienced or inexperienced in the work. While it is the duty of the master to inform an inexperienced servant of any danger to be apprehended in conducting a particular employment in which he is engaged, and of which the master has knowledge, but which may not be known or understood by the servant, his paramount duty to his servant, whether inexperienced or experienced, is to use due care and diligence to keep the place of employment in safe condition so that such servants may not be exposed to unusual and unreasonable risks.   A servant who has had experience in an employment, and has notice and knowledge of the dangers incident to the ordinary course of the work, and who undertakes the employment or continues to perform it with the knowledge, assumes the risk of injury.   But the fact that a servant is experienced, or that an inexperienced servant has notice of perils ordinarily incident to the employment, does not relieve the master of the duty to protect both from risks which are not natural and ordinary incidents to the conduct of the business, and which could have been removed by the exercise of due diligence.   The evidence in the case at bar shows that danger of the fall of the bluff was not an ordinary peril of the employment, nor as obvious to the employee as to his employer.   On the contrary it was one unknown to the plaintiff and known as a fact to the defendant.   It was an imminent danger when discovered and could readily have been removed and it was the affirmative duty of the defendant to have done so and not leave it to imperil the men below, and it owed this absolute duty to the plaintiff whether he was an experienced or inexperienced employee.   So that the plaintiff having a right to recover under the evidence, whether an experienced or an inexperienced employee, the limitation on his right to do so under this particular instruction, only if the jury found that he was inexperienced, and had not been warned of the danger, cannot be complained of by defendant, as the instruction was not prejudicial to it, but on the contrary was unfavorable to the plaintiff.

The appellant attacks several other instructions given by the court but we do not feel called upon to review them particularly.   While parts of some of them may be subject to criticism, when taken separately, still, taking the instructions

as a whole as the jury necessarily did, they correctly stated the law applicable to the evidence in the case.

The judgment and order are affirmed.

Melvin, J., and Henshaw, J., concurred.