[Civ. No. 4395.  First Appellate District, Division One.—January 10, 1923.]

## W. E. RICHARDSON, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

[1] EMPLOYER AND EMPLOYEE—BREAKING OF POLE—INJURY TO LINEMAN—KNOWLEDGE OF DEFECT—ASSUMPTION OF RISK.—Plaintiff, although an experienced lineman, having been in the employ of the railroad company, acting under the authority and direction of a foreman in the doing of whatever work he was assigned to do, and he having had no knowledge of any unsoundness of the pole which broke and precipitated him to the ground, the defect in the pole not having been obvious, and the foreman, after making an inspection of the pole, having determined that the pole was all right and directed plaintiff to ascend it, the latter could not be held as a matter of law to have assumed the risk of the unsoundness and possible fall of the pole when he ascended it, as a risk which was incident to his employment.

APPEAL from a judgment of the Superior Court of Napa County. Henry C. Gesford, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert, R. G. Hillebrand, W. V. Herrin, L. E. Johnston and H. L. Johnston for Appellants.

Sullivan & Sullivan and Theo. J. Roche for Respondent.

RICHARDS, J.—This appeal is from a judgment in the plaintiff's favor in an action for damages for personal injuries sustained by the plaintiff, a lineman of the Southern Pacific Company, while the railroad of such corporation was being operated under the direction and control of the Director-General of Railroads of the United States. Sub-

1. Applicability of doctrine of assumption of risk to lineman, notes, 15 Ann. Cas. 598; Ann. Cas. 1912B, 467.

Assumption of risk of injured employee who complained of defect and was ordered to continue work, notes, 12 A. L. R. 701; 47 L. R. A. (N. S.) 62; L. R. A. 1916C, 69.

Servant's right of action for injuries received in obeying direct command accompanied by assurance of safety, notes, 48 L. R. A. 542; 23 L. R. A. (N. S.) 1014; 30 L. R. A. (N. S.) 453.

sequent to the inception of the action it was dismissed as to the Southern Pacific Company, but continued as against the Director-General. The facts of the case are practically undisputed, and are briefly as follows:

In the early part of February, 1918, the plaintiff, who was an experienced lineman, entered the employ of the railroad corporation in that capacity. On February 6, 1918, he was ordered by the foreman of the division to which he had been assigned to accompany him, with certain other members of the crew, to Rutherford, Napa County. Prior to going to Rutherford the foreman had received from the superintendent's office written instructions concerning the work to be done there, which instructions, accompanied by a blue-print, directed the removal of three certain poles from the place where they had been standing to a near-by new location, as shown upon said blue-print. These instructions contained the history of the poles, and the foreman understood at the time he received such instructions that the engineering department of the corporation had preceded himself and his crew a few days before to said place to lay out the work to be done there. The foreman also knew that the corporation maintained a system of inspection of poles under which, from time to time, the poles along its railroad lines were gone over for the purpose of determining whether they were sound or unsound, and that poles thus inspected and found to be unsound were marked by the making of a cross upon them, indicating their unsoundness. The poles in question here contained no such marking. The plaintiff was not informed as to these facts or as to the contents of the instructions which the foreman had received, nor was he or the fellow-employees of his crew, other than the foreman, advised as to the character of the work to be done at the point indicated prior to their arrival there. Upon reaching the scene the foreman informed them that one corner pole and certain others near the railroad station were to be removed and set back a short distance, and that the work was to be done without interfering with the wires or telegraph service. Upon being so informed the plaintiff suggested to the foreman that "We ought to have our pike-poles along," to which the foreman replied: "We have not got them; we will have to set them up

without pike-poles.'' He then directed the plaintiff to make a hole at the side of the corner pole, which was the first to be removed, while the foreman and other linemen were engaged digging a hole a few feet away in which to reset said pole. The plaintiff dug a hole alongside of said pole about one and one-half or two feet deep, and while doing so noticed that there appeared to be some ground rot affecting the surface of the pole where it appeared to have been underground, to which he called the foreman's attention, who came over and, using a bar or shovel, scraped the ground rot down from the post to determine whether it affected the interior of the pole. Finding, apparently, that it was a surface rot, the foreman told the plaintiff that the pole was all right and ordered him to get his belt-lines and tools and go up the pole and untie the wires so that the pole could be removed. This was the first information that the plaintiff had that he was expected to climb the pole, but he then proceeded to procure his equipment and ascend the pole. Having released one of the wires from the pole the plaintiff suggested to the foreman that a temporary guy wire be run to help support and steady the pole when the remaining wire should be released. This met with the foreman's approval and such wire was run according to the plaintiff's suggestion. He then released the remaining wire, when the pole broke, precipitating him to the ground, whereby he sustained the injuries complained of in this action. The pole was found to be internally in a rotten and decayed condition, to which condition its breakage and fall was due. The plaintiff in his complaint herein alleged that the said pole which he was required to ascend was rotten, unsound, and defective, which condition was unknown to plaintiff but was known to his employer or could have been discovered and known by it through the exercise of ordinary care and vigilance, and that his fall and injuries were caused by the said rotten, unsound, and defective condition of said pole. The answer of the defendant puts in issue the main allegations of the plaintiff's complaint regarding the unsound condition of said pole or that the defendant knew or ought reasonably to have known the same, or that the plaintiff's fall and injuries were the result of any negligence on the part of the defendant in that regard. By way of

separate answer and defense the defendant averred that
the plaintiff was at the time he ascended said pole an
experienced lineman, and that the injuries, if any, sustained
by him arose from the risks incident to the employment in
which he was engaged; that the plaintiff knew, or by the
exercise of ordinary care on his part should have known,
of whatever danger there was incident to his work on and
around said pole, and that said pole was likely to or might
fall with him when he ascended the same, and that he
then and there assumed the risk of being injured in and
about said work, and that any injuries sustained by him
arose from his assumption of said risk and were not due
to any negligence on the part of his said employer. The
cause was tried before a jury. At the close of the plain-
tiff's case the defendant moved for a nonsuit, which the
trial court denied. A motion for a directed verdict in the
defendant's favor was also denied. At the conclusion of
the evidence, and in the course of the submission of the
cause to the jury, the defendant requested certain instruc-
tions reflecting their theory of the law of the case, which
the court refused to give other than in a modified form.
The defendant assigns error on the part of the trial court
in its refusal to give, and its modification of, said instruc-
tions, but offers neither argument nor authority in favor of
said assignment of error except as the same may be em-
braced in the discussion of the question of the plaintiff's
assumption of risk. [1] The case upon appeal may there-
fore be considered in the single aspect as to whether under
all the circumstances of the case as above briefly set forth
the plaintiff can be held as a matter of law to have as-
sumed the risk of the unsoundness and possible fall of the
pole when he ascended it, as a risk which was incident
to his employment. If so, the defendant's motion for a
nonsuit should have been sustained and the motion for a
directed verdict granted; if not, if the question of the
plaintiff's assumption of risk was, under all of the circum-
stances of the case, proper to be submitted to the jury, then
the verdict of the jury and judgment based thereon should
be sustained. We are satisfied that the authorities do not
support the appellant's contention that the plaintiff, under
the circumstances of this case as above set forth, should
be held as a matter of law to have assumed the risk of the

pole in question breaking, and of his consequent fall and injury, so as to prevent any recovery on his part in this case. The plaintiff, while an experienced lineman, was an employee of the corporation, acting under the authority and direction of a foreman in the doing of whatever work he was assigned to do. He had no previous knowledge of the location or character of the particular work to be done at Rutherford prior to his arrival on the scene. He had, therefore, no knowledge of any unsoundness of the pole or poles to be removed and to be reset there. Upon being informed by his foreman as to the nature of the work then immediately to be done, he had the right to assume that the poles to be removed and reset were sound, otherwise they would not have been suitable for use in the new location. Being under the direction of a foreman, he had a right to rely upon the performance by his employer and by his foreman of the duty resting upon his employer, whom the foreman there immediately represented, of supplying reasonably safe appliances and a reasonably safe place to work. There is nothing in the evidence herein or in the experience of this particular foreman to indicate that poles of the character of those in question here are dangerous for linemen to ascend if sound, or that this plaintiff in ascending said pole under the existing circumstances would have been in any danger if said pole had been sound. The work which the plaintiff was directed to do at the base of said pole revealed certain signs of ground rot, which seemed to be external, but which the plaintiff called the foreman's attention to for his investigation and determination as to the effect of this external ground rot upon the soundness of the pole. This episode revealed the precise legal relation between the plaintiff as lineman and his foreman in charge of the work. The former had a right to rely, and apparently did rely, upon the latter, to investigate and determine every fact essential to the provision of a safe place for him to work, and the foreman recognized and undertook to perform this duty in his investigation of the ground rot to which his attention had thus been directed, declaring after such investigation, "The pole was all right." Other than this superficial defect there was nothing about said pole to indicate that it was rotten at the core. The defect to which its later fall and

plaintiff's injuries were due was not an obvious defect, and we are aware of no rule of law which requires an employee, in the absence of any knowledge as to latent defects or of any facts which would reasonably put him upon inquiry, to conduct an investigation on his own account as to the existence of latent defects in the place or appliances which have been provided by his employer for the doing of his assigned work. The rule upon this general subject was well stated by Mr. Justice Lorigan in the case of *Brown* v. *Sharp-Hauser Contracting Co.*, 159 Cal. 89 [112 Pac. 874], in the following terms:

"It is the duty of an employer to furnish a reasonably safe place in which the employee may perform the work in which he is engaged, and to use ordinary care to keep the place reasonably safe so that the employee may not be exposed to danger. It is true that the employer is not an insurer of the safety of the employee. The measure of his obligation is to use ordinary care in seeing that the place where the work is being done is safe in the first instance, and to employ the same degree of care in continuing to keep it safe. No liability is cast upon the employer to indemnify an employee for injuries which are the ordinary risks of the business in which he is employed. Where a person undertakes to work in a place where conditions of danger are liable to occur in the ordinary prosecution of the work; where he has knowledge of such dangers, or his facilities for seeing or discovering them are just as good as those of his employer, and he undertakes the employment, or continues in the work with the knowledge or opportunity for ascertaining those dangers, he is in law deemed to assume the perils incident to the employment, and cannot look to the employer for indemnification for injuries resulting therefrom. But this rule of assumption of risk has no application where the dangers are not obvious; where they are known to the employer and not to the employee, or where, in the exercise of ordinary care the conditions of peril might have been discovered and removed by the employer."

That the foregoing rule has special application to cases where the employee is engaged in doing work under the immediate direction of a foreman the authorities all agree. A quite recent and instructive case upon this subject is

that of *Bradford* v. *City of St. Joseph* (Mo. App.), 214
S. W. 281, in certain incidents of its essential aspects
identical with the case at bar, and wherein the supreme
court of Missouri held that when a foreman orders a line-
man to climb a pole it is the duty of the foreman, and
not of the lineman, to inspect the pole in order to ascertain
its condition as to soundness and safety; and that a line-
man in obeying such direction cannot be held to have
assumed risks which were not obvious and of which he had
no knowledge.    Another instructive case touching the same
subject and similar in its facts to the case at bar is that
of *Coal & Coke Ry. Co.* v. *Deal*, 231 Fed. 604 [145 C. C. A.
490], wherein it was held that a lineman working under
a foreman was entitled to rely upon the assurance of his
foreman that there was no danger in the service which he
was required to perform, and could not be deemed to have
assumed the risk incident to his employment in obeying the
orders of his master.    This case is further instructive and
decisive upon another feature of the case before us.    The
evidence herein discloses that when the plaintiff was first
informed as to the particular work to be done in the way
of removing and resetting the poles in question he sug-
gested to the foreman that "We ought to have our pike-
poles along," to which the foreman replied, "We haven't
got them; we will have to set them up without pike-poles."
The appellant insists that this evidence shows that the
plaintiff was aware of the dangers attending the work and
hence assumed the risk incident thereto; but the court in
the case last above cited, dealing with a similar situation,
said: "It is well settled that where an employee requests
an overseer or superintendent to furnish additional tools
and appliances in order to insure his safety, and the over-
seer or superintendent refuses to comply with such request,
but assures the employee that there is no danger in the
service he is required to perform, the employee under such
circumstances will not be deemed to have assumed the risk
incident to his employment."    The case last above cited was
one arising under the federal Employers' Liability Act,
by which it is conceded this case is also governed, and it is
therein held that there is an implied obligation of the
master, under his contract with those whom he employs, to
use due care in supplying and maintaining suitable instru-

mentalities for the performance of the work or duty which he requires of them, and he is liable for damages occasioned by a neglect or omission to fulfill this obligation, whether it arises from his own want of care or that of his agents to whom he intrusts the duty. (Citing *Seaboard A. L. Ry. Co. v. Horton,* 233 U. S. 492 [Ann. Cas. 1915B, 475 L. R. A. 1916C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, see, also, Rose's U. S. Notes].)

The cases cited by the appellant in support of his contention herein, when examined, are all found to relate to the assumption of risk where the danger is obvious or where the risks are the ordinary and known risks inherent in the nature of the work. The cases thus cited having special reference to linemen and other work of climbing poles are either cases where the linemen in doing the particular work to which in each case they were assigned were not under a foreman, but were themselves charged with the duty of testing the safety of the particular poles to be ascended, or else they were cases where the work to be done was that of removing poles known to be defective and which were being replaced for that reason. Cases of this character have no application to the facts of the case at bar. The appellant in his closing brief concedes that "the pole was in a rotten and decayed condition otherwise it would not have broken." The evidence fully discloses that this rotten and decayed condition of the pole was within the interior of the pole and was covered and concealed by its outside shell and was such as would not be disclosed by an exterior or superficial inspection of the pole. It could not in reason be claimed that this plaintiff, before climbing the pole, apparently sound, and which would not have fallen unless latently rotten, could be required to make such inner investigation as would be necessary to determine that the pole was sound at the heart. The duty of such investigation rested upon the employer or his agents in charge of the work. The foreman in this particular case was in a superior position in point of both knowledge and authority over the lineman. He had received the written history of the pole from his superior before proceeding with the work, he knew that it was the custom and duty of his employer to maintain and conduct a regular system of inspection of the poles of the corporation. He also was advised that the

engineering department had only a few days before visited the scene and laid out the work to be done. He had, and he exercised, the authority to order this lineman to ascend this pole. The plaintiff had a right to rely upon the possession of this superior knowledge on the part of his foreman and upon the fact that the latter's order and direction to climb the pole was based upon his assurance arising from his superior knowledge and position that "the pole was all right." He cannot, therefore, be held to have assumed a risk incident to a condition which was not obvious, but was unknown to him and which he was assured by his foreman did not exist.

The judgment is affirmed.

Tyler, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 8, 1923.

All the Justices concurred.