[Civ. No. 2370. Third Appellate District.—December 12, 1921.]

## P. W. BUSH, Appellant, v. WEED LUMBER COMPANY (a Corporation), Respondent.

[1] Nonsuit—Motion—Admission of Facts.—A motion for a nonsuit admits the truth of the evidence produced and every legitimate inference of fact that may be legitimately drawn therefrom.

[2] Id.—Decision on Motion—Limitation.—The court cannot go beyond the limits of a motion for a nonsuit in rendering its decision.

[3] Id.—Doubtful Case—Duty of Court.—It is the duty of the court on a motion for a nonsuit if there be any doubt to let the case go to the jury.

[4] Id.—Interpretation of Evidence.—On a motion for a nonsuit, the evidence should be most strongly interpreted against the defendant.

[5] Negligence — Discovery of Spring — Offer of Reward — Duty Toward Searchers—Ordinary Care.—Where a lumber company

employed plaintiff to dig a well and while waiting for his outfit to be repaired he went in search for a spring of water, for the discovery of which the company had offered a reward, the offer was an invitation to go upon the company's premises for the purpose of the search, and while so engaged the plaintiff was entitled to the legal protection of ordinary care on the part of the company.

[6] Id.—Return from Search—Personal Injuries—Issues—Questions for Jury.—Where the plaintiff in returning from the search for the spring was injured by being struck by a crane operated by a crew of men employed by the lumber company, whose operations he had stopped to watch at a distance of thirty or forty feet from the crane, the issues of negligence and contributory negligence in an action for such injuries were for the determination of the jury.

APPEAL from a judgment of the Superior Court of Siskiyou County. James F. Lodge, Judge. Reversed.

The facts are stated in the opinion of the court.

Collier & McNamara for Appellant.

Taylor & Tebbe for Respondent.

BURNETT, J.—The appeal is from a judgment of nonsuit. The nature of the action may be seen from the following allegations of the complaint: "That on and prior to the 9th day of June, 1919, plaintiff was employed by said Weed Lumber Company to bore a well for said Company on its premises near Camp 3, at Morrison, in the County of Siskiyou, State of California; that on said 9th day of June, 1919, while plaintiff was employed as aforesaid, his said well boring outfit broke down and while waiting for same to be repaired, plaintiff, at the solicitation of C. W. Murphy, general superintendent for said Weed Lumber Company and further induced by a reward offered by said Weed Lumber Company to anyone finding water for the supply of said Company's Camp, went in search of a certain spring of water reputed to be above said Camp 3 and after making said search, while returning to said camp, where he was staying, plaintiff necessarily passed along said company's railroad track and by a crew of men employed by said company unloading logs from flat cars by means of a certain mechanical contrivance called a 'Merry Crane'; that when plaintiff was opposite the said crane the fore-

man of said crane requested plaintiff to hand him a block of wood, which plaintiff did and thereupon plaintiff withdrew a distance of thirty or forty feet in the rear of said crane to await transportation back to camp and while waiting and watching said crane in operation, the said crane owing to its careless and negligent operation by defendant's said employees and owing to the gross negligence and carelessness of said employees in not causing same to be anchored down and owing to the negligent and careless manner in which said company's railroad track was constructed and maintained, on which said track said crane was standing, the said crane, without fault on the part of this plaintiff, toppled over backwards and inflicted on plaintiff the injuries hereinafter set forth and described.''

[1] There is no controversy as to the principles that must govern in the determination of a motion for nonsuit. It admits the truth of the evidence produced and every legitimate inference of fact that may be legitimately drawn therefrom (*Estate of Daly,* 15 Cal. App. 329 [114 Pac. 787]); [2] the court cannot go beyond the limits of the motion in rendering its decision (*Daley* v. *Russ,* 86 Cal. 114 [24 Pac. 867]); [3] it is the duty of the court if there be any doubt to let the case go to the jury (*Mitchell* v. *Brown,* 18 Cal. App. 117 [122 Pac. 426]), [4] and the evidence should be most strongly interpreted against the defendant (*Hoff* v. *Los Angeles etc. Co.,* 158 Cal. 596 [112 Pac. 53]).

No contention is made that the plaintiff was not seriously injured or that there was no evidence that it was due to the faulty construction of the "crane," but the claim of respondent is that the defendant owed the plaintiff no duty to protect him, and therefore there was no actionable negligence on the part of respondent. It is declared that the case is governed by the decisions of the supreme court in *Schmidt* v. *Bauer,* 80 Cal. 565 [5 L. R. A. 580, 22 Pac. 256], *Kennedy* v. *Chase,* 119 Cal. 637 [63 Am. St. Rep. 153, 52 Pac. 33], and *Grundel* v. *Union Iron Works,* 141 Cal. 564 [75 Pac. 184], in pursuance of the doctrine that "the duty of a master to furnish his servant with a reasonably safe place in which to work is limited to the premises where the employee is required to be for the purposes of his employment, and does not extend to his protection while upon private excursions outside those limits." The

vital question is whether the case falls necessarily within the principle of those decisions, or is there any ground for holding that defendant did owe plaintiff the legal duty of exercising ordinary care for his protection?

[5]  Plaintiff testified that he had been employed to dig a well for defendant and while upon the latter's premises, "about the seventh day of June I was telling Mr. Murphy I had been down to Charlie Phelps' and he was telling me that himself and Frank Mills had found water coming down of the gulch at the foot of Mount Shasta, and Mr. Murphy told me, while I was waiting for the tools, to go and hunt for it, and I also told him that Mr. Hall that was scaling lumber there, told me, he says he had found some water seeping out of the 'Whaleback' there and Mr. Murphy told me to go to the barn and get a horse and go on horseback, and I told him it hurt me to ride horseback, that I would go on the train and I would go as far as I could on the train, then I would go on foot the balance of the way. And on the 7th, that was the day I went up around the foot of Mount· Shasta up to the snow line and I couldn't find no water, everything was dry below the snow and I came back; and the next day I was kind of tired and didn't go out, and on the 9th I went out on the train again to the foot of 'Whaleback' and walked around there hunting water." He further testified that Mr. Murphy told him that if he could find a spring that would supply the camp with water there would be one hundred dollars in it for him and that there was posted on the premises a sign or notice that a reward of one hundred dollars would be paid by the company to anyone who would find a spring from which water could be piped to the camp. The offer through the notice or through Mr. Murphy did not, of course, bind respondent to pay anything to plaintiff unless he found the water, but it was a clear invitation to go upon the premises for the purpose of searching for such a spring. It could not be found without a search and the search could not be made without going upon the premises. Plaintiff was therefore undertaking a mission in pursuance of the request and invitation of defendant, and while engaged in that task he was entitled to the legal protection of ordinary care on the part of respondent. (*Meyers* v. *Syndicate Heat & Power Co.,* 47 Wash. 48 [91 Pac. 549]; *Bennett* v. *Louisville &*

*N. R. R. Co.*, 102 U. S. 577 [26 L. Ed. 235, see, also, Rose's U. S. Notes]; *Roseberry* v. *Niehaus & Co.*, 166 Cal. 481 [137 Pac. 232].)

[6] The question then arises whether plaintiff, when injured, was acting within the limits and while in the pursuit of this search for water. In its consideration there would be, manifestly, no difference whether he was going or returning if he was not making an "excursion" beyond the limits of the purpose for which he was invited upon the premises.

After stating that he had gone to the foot of "Whaleback mountain" and hunted there for water, he started to return and came down to where they were working with the crane; that in accordance with the request of one of the workmen he handed him a chunk of wood to block a log; that he then walked to the side of the track and sat down on a stump "and they were working the crane that way [indicating], and I looked up and see the crane kind of dip that way a little and I got up and came back over this side right opposite from where they was working back of the crane, and sat down straddle of a log about thirty or forty feet from the crane and so I sat there maybe about five minutes, maybe ten," when he looked at his watch and started to put it back in his pocket and "I looked up and the crane was coming right for me and I jumped off and run; and I throwed my eyes up and I see that the crane was coupled to the two cars. I thought that the coupling would hold and it would throw the crane around this way, but it didn't, it just lifted it right off, the top did, and it came right over this way [indicating] and came down this way and hit me and knocked me down and laid across me here." When asked what he was doing there he said he sat down to rest. "I was very tired. I had been walking in loose sand and gravel about thirty hours. I had asked them about the train, and I was going to rest for a few minutes. The train wasn't there and I was going to hike down to camp." The record shows furthermore the following: "Q. As I understand it, when you came out in the morning, you got off the crane, where the crane was spotted and walked over to 'Whaleback'? A. Yes, I got off the engine and walked over to 'Whaleback.' Q. When you returned, you returned by the same way, in other words, by

the crane, and then to go on down to the camp? A. Yes. Q. Was that the nearest and most direct route? A. It would be pretty near a straight line from where I was, straight through to the camp."

We fail to see any difference in principle between the facts herein and those in the Roseberry case, *supra.* Therein the plaintiff was sent by his employers, Poetsch & Peterson, to the premises of defendant to see that everything properly appertaining to a boiler, which had been purchased by them, should be brought away. As stated by the supreme court: "The boiler was loaded upon a truck at the rear of a gangway opening on Brannan Street. Mr. Niehaus had left plaintiff, and later plaintiff started to depart from the premises, but stopped to converse with a friend. He then went to the office to say good-by to Mr. Niehaus, but not finding him, turned in the door to leave when he saw the loaded truck starting out by the gangway leading to Brannan Street. He waited for the truck to pass, and then walked behind the men who were following it. Before he reached the open gate a pile of lumber fell upon him, broke his leg and inflicted other serious injuries."

The supreme court held that it was proper to submit to the jury the question as to the negligence of the defendant as well as the contributory negligence of the plaintiff.

Respondent urges that the distinguishing feature of that case is, that therein the plaintiff was an "invitee" and therefore the defendant owed him the duty of ordinary care. But it is difficult to discern any difference in principle between the implied invitation in that case for the owner to come and get his boiler and the express invitation in this case for plaintiff to come upon the premises to seek for water. In neither case was the plaintiff a trespasser or mere licensee, and, as we understand it, the legal obligation was the same in both instances. In each, also, the plaintiff was returning after having gone upon the premises for a certain definite purpose and was not departing from the course that might be considered direct and opportune. The only difference is that herein the plaintiff sat down thirty or forty feet from the dangerous instrumentality, while therein the plaintiff was walking past the lumber when it fell. His sitting down near the crane might present a question of contributory negligence, but in view of his explanation of

the circumstances surrounding the affair, it was a matter to be submitted to the determination of the jury.

In the Schmidt case, *supra,* cited by respondent, the plaintiff entered the private residence of the defendant without an invitation and was injured by falling into a cellar. It was held that since he was not invited nor allured into said building, he was thereby the mere licensee of the owner and for that reason the latter owed him no duty, "and he went there subject to all the risks attending his going."

In *Kennedy* v. *Chase, supra,* "the servant made a private excursion upon the deck of the vessel upon his own account and for his own convenience, to place his coat upon a main hatchway unnecessarily remote from the place of his employment," and it was in view of such circumstance that the supreme court held that the employer was not liable. In other words, the employee, when injured, was beyond the limits of the place where he was required to be for the purpose of his employment. The employee was manifestly acting outside the scope of his employment, since he was on a part of the vessel where he was neither required nor invited to go. If herein the plaintiff on his return had departed from the direct route to visit the crane on his own account and thus had been injured the Kennedy case might be in point.

So in *Grundel* v. *Union Iron Works, supra,* the deceased was not employed by the defendant nor was he invited to go upon the vessel. He was either a trespasser or a mere licensee and hence the defendant owed him no duty to keep its gang-plank in safe condition.

In *Means* v. *Southern California Ry. Co.,* 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001], not cited by either party, many authorities are collated which distinguish between the case of one invited upon the premises and a trespasser or mere licensee. Of course, it is true, as therein pointed out, that in case of a licensee the land owner is liable for intentional or wanton injury but not for the lack of ordinary care. The court assumed, though, that the rule is well settled that such care must be exercised toward one who is invited to the premises, and we understand that the legal proposition is not disputed by respondent.

It is probably unnecessary to state that the situation would be different if the case had been submitted upon the evidence introduced and the jury had rendered a verdict for the defendant, but, as we view it, the trial court erred in refusing to submit the issues to the determination of the jury.

The judgment is reversed.

Finch, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.*, was acting.