[Civ. No. 2633. Third Appellate District.—August 27, 1923.]

## JESSE P. ELDER, a Minor, etc., Appellant, v. JOE D. ROSE et al., Respondents.

[1] NONSUIT — INFERENCES—DUTY OF COURT.—A motion for nonsuit presupposes the truth of the evidence produced and concedes every inference of fact that may be drawn legitimately from such evidence; the court cannot go beyond the limits of the motion in rendering its decision; it is the duty of the court, if there be any doubt, to let the case go to the jury and the evidence should be most strongly interpreted against the defendant.

[2] EMPLOYER AND EMPLOYEE—TOOLS AND APPLIANCES—DUTY OF EMPLOYER—CARE.—An employer is required to exercise ordinary and reasonable care to provide for his employee safe tools, machinery, and appliances.

[3] ID.—EMPLOYEE'S ARM CAUGHT IN TRACTOR—DIRECTIONS OF EMPLOYERS — NEGLIGENCE — EVIDENCE—INFERENCE—NONSUIT.—Where an employee, a minor, was injured by having his arm caught in the machinery of a tractor while throwing dirt, as directed by one of his employers, upon the rollers of the tractor so as to make them revolve, and the employers permitted the machine to get out of order so that the rollers would not revolve and failed to furnish some simple mechanical device for precipitating dirt upon the rollers, a rational, if not the only, inference to be drawn from such facts is that the employers violated their duty toward said employee in failing to exercise ordinary and reasonable care to provide safe tools, machinery, and appliances; and in an action

---

2. Care required of master in providing appliances, notes, 1 **Ann. Cas.** 340; 19 **Ann. Cas.** 151.

by the employee for damages for the loss of his arm, the question of the employers' negligence should have been submitted to the jury.

[4] ID.—DOCTRINE OF ASSUMED RISK—NONAPPLICABILITY TO AGRICULTURAL EMPLOYMENT.—The doctrine of "assumed risk" does not apply to cases involving injuries in agricultural employment.

[5] ID.—ACTION FOR DAMAGES — NEGLIGENCE OF EMPLOYERS — PROXIMATE CAUSE—NONSUIT—EVIDENCE.—In an action by an employee for damages for the loss of an arm which was caught in the machinery of a tractor while throwing dirt, as directed by one of his employers, upon the rollers of the tractor so as to make them revolve, an order granting a nonsuit upon the theory that there was no evidence to show that the negligence of the employers, if any, was the proximate cause of the injury was erroneous, where the jury could have concluded that the proximate cause of the injury was due to the negligence of the employers in failing to keep the machine in repair and especially to furnish a suitable contrivance for the distribution of the dirt.

[6] ID.—STUMBLING OF EMPLOYEE—EFFECT UPON LIABILITY OF EMPLOYERS.—In such action, the fact that the employee stumbled, if it was a fact, at the time his arm was caught did not exonerate the employers from liability, since his stumbling was one of the very things that the employers were bound to anticipate and guard against on account of the probabilty it would happen.

[7] ID.—EVIDENCE—NONSUIT.—In such an action, upon a motion for nonsuit made solely upon the ground that there was "no proof of any negligence on the part of the defendants in this action," neither the circumstance of plaintiff's stumbling nor the circumstance of his sleeve coming in contact with a wheel of the tractor could be considered as having any bearing upon the primary responsibility of defendants.

APPEAL from a judgment of the Superior Court of Glenn County. H. C. Bell, Judge. Reversed.

The facts are stated in the opinion of the court.

Ware & Ware for Appellant.

R. M. Rankin and Preston & Duncan for Respondents.

THE COURT.—The following opinion, prepared by the late Justice Burnett a few days before his death, is adopted as the opinion of the court.

"The action was for damages for the loss of an arm alleged to have been caused by the negligence of defendants.

The appeal is from a judgment of nonsuit granted at the close of plaintiff's case. Plaintiff, a minor of the age of nearly eighteen years, went to work as tractor engine swamper and plow tender for defendant on November 5, 1920. The tractor engine was a 75 h. p. Best caterpillar, track laying type, and the plow it drew was a gangplow. At the time of the injury the engine was operated by William E. Rose, one of the defendants, in plowing a grain ranch belonging to both defendants. The duties of the plaintiff related not only to the care and operation of the plows, but he was required to oil the tractor and the tracks which are the caterpillar linked belts or endless chains which carry the tractor and convert its power into traction upon the ground. His further duty was to watch the track rollers, which are spool-like wheels, which bear down upon and under which the ground side of the moving track operates, and he was to keep them rolling by putting, when necessary, oil and dirt upon the tracks in a manner directed by his employers. At the time of the injury, the tractor was not in good running order by reason of the failure of the oiling system to work smoothly and efficiently and from the fact that the rollers upon which the track ran would often stick and refuse to revolve. For the first trouble the plaintiff was personally instructed by William E. Rose to take a quart measure can, and having taken the oil from a five-gallon can on the tractor, with it to oil the rails of the track on both sides of the machine whenever they needed it. These rails were about three inches apart in the middle of the tracks, which were about twenty-four inches wide. The oil had to be dropped on the rails while the tractor was being operated, and plaintiff was instructed by said William E. Rose to pour the oil just in front of the first rollers and to be sure to pour it on the rails. This he did at various times to the knowledge of his employer. As to the rollers, at times they did not revolve because some of them were old and worn and because they would become clogged with dirt and oil.

"About a week after Elder went to work on the plow, said defendant, who was driving the tractor, turned around and signaled to the former to come up to the engine. When he did so Rose told him to stay on the engine and steer while he got down and fixed the rollers. Rose then

got down, picked up dirt and with his hand put it in an opening and dropped the dirt on the tracks and the tracks carried it under the rollers and the friction caused the rollers to start turning. He did this by dropping the dirt through the same openings on both sides used by the plaintiff in pouring oil upon the rails. After this demonstration, Rose told plaintiff to watch the rollers and if they stuck to remedy it by dropping dirt the same way through the openings. The tracks of the machine ran around what were called drive sprockets at the rear end and a smooth wheel, called an idler, about three feet in diameter on the front end. The openings referred to were just behind the idler on each side and just in front of the track frame. Two of their sides consisted of moving parts, the track above and the large idler wheel over which the track passed in front. The one on the right was about fourteen inches wide and the one on the left, where the injury was received, was only about eight inches in width on account of a certain boxing taking up a part of the space. The plaintiff was directed by William E. Rose to apply dirt when needed by reaching in these openings with his hand and arm while the machine was in motion and while he was walking on the ground along its side. According to the evidence this was the only practicable way for doing this work and it was done in that manner frequently several times a day by plaintiff in his employer's presence, and on some occasions Mr. Rose would see the rollers sticking and would signal to plaintiff to get off the plows and walk forward and apply dirt to the moving rails. To drop the dirt directly over the inner rails it was necessary to thrust the hand and arm into the opening a distance of approximately fifteen inches. As to how the accident occurred, the plaintiff testified:

" 'I saw the two back rollers were sliding and I walked ahead and picked up the dirt and reached through the opening with my hand in ahead of this boxing in on the track and that goes back to the track and in front of these two back rollers that was sliding here . . . I was walking at the side of the tractor and had my right arm in the opening in front of this box dropping dirt on the rails down in here [showing on the diagram], and I don't know whether I stumbled or caught my sleeve or how, but my arm fetched

up on this roller between the idler and the track and rolled around this idler to the bottom of the track here.' [Showing on the diagram.]

"It further appears from his testimony that the machine was running under load at the time, vibrating and lunging, and plaintiff was walking over the uneven ground of a grain-field; that he was never warned of the danger of the task and was never given any instructions or tools by which it could be performed more safely. When asked if he realized that he was apt to get hurt he replied:.

" 'I didn't realize that I would. They told me to do it and I was trying to please them and I knew if I didn't I would lose my job, and, of course, I supposed it was a general thing, and that everybody did it that way, swamping that way.'

"No device was furnished the plaintiff by the use of which in safety he could have applied the oil or dropped the dirt on the tracks. It is a fair inference from his testimony that if he had been furnished for that purpose with a common ash shovel used for stoves the peril could have been minimized or obviated, and the spade or shovel on the machine was too large to be available. As to that we may quote his testimony as follows:

" 'Q. State whether or not you could have used the spade on the left side in dropping the dirt? A. I don't think that spade could be used on the left side. Q. Why? A. It was too large. It was one of those spade handled spades and too large; but if it had been a small ash shovel or something like that that could have been put in the opening it could have been used. Q. State whether or not being provided with an ordinary ash shovel such as is being used for stoves, you could have got that to operate and dropped the dirt on the track with it? A. I think it could have been used, yes, sir.'

"Respondents seem to believe that the witness was not sufficiently positive and emphatic in his affirmation to make his testimony of adequate probative force, but in this they are mistaken. Necessarily, the matter involved a question partaking somewhat of the nature of an opinion and the witness so expressed it. It does not appear that he had ever actually used a shovel for such purpose, but from his knowledge of the mechanism and his experience in dropping

the dirt he was abundantly qualified to exercise a sound judgment on the subject. Besides, as suggested by appellant, 'the parts of the tractor, the nature of the opening and the purpose and nature of the operation of dropping dirt having been fully described to the jury, in the total absence of any testimony on the subject of the use of a shovel to drop dirt, the jury was perfectly competent to draw its own conclusions that dirt could have been dropped on the lower track by means of some such simple mechanical device.'

"The foregoing is deemed a sufficient recital of the facts for the application of the familiar legal principles that are involved.

"As to the rule applicable in cases of nonsuit there can be and is, of course, no controversy. [1] The motion presupposes the truth of the evidence produced and concedes every inference of fact that may be drawn legitimately from such evidence; the court cannot go beyond the limits of the motion in rendering its decision; it is the duty of the court if there be any doubt to let the case go to the jury and the evidence should be most strongly interpreted against the defendant. (*Bush* v. *Weed Lumber Co.,* 55 Cal. App. 588 [204 Pac. 24], and cases therein cited.)

[2] "As to the duty of the employer to his employee it is equally well settled—and, indeed, it is not disputed herein—that he is required to exercise ordinary and reasonable care to provide safe tools, machinery, and appliances. The dictates of humanity as well as the mandate of the law exact every reasonable and practicable precaution to reduce the danger of a hazardous occupation. The authorities upon the subject are multitudinous and the doctrine is quite familiar. The following quotations may be taken to illustrate the general expression of the rule. In 18 R. C. L. 587 et seq. it is said:

"'The employer's obligation of care extends as a general rule to all tools, machinery and appliances that may be furnished for the use of the employee in the discharge of his duties; and for any neglect of this duty the employee may hold the employer liable in damages. The employee has a right to rely upon the performance of this duty by the employer and to govern his actions accordingly. . . . The measure of the employer's duty is the exercise of ordinary

or reasonable care to provide safe tools, machinery and appliances. . . . Although the doctrine has met with some opposition, the courts have generally held that an employer owes to his employees a duty to make safe the place where they are required to perform their services, failing in which he renders himself liable to an employee who may sustain injuries as the proximate result of his neglect.'

"In *Brown* v. *Sharp-Hauser Contracting Co.,* 159 Cal. 89 [112 Pac. 874], the rule is thus stated:

" 'It is the duty of an employer to furnish a reasonably safe place in which the employee may perform the work in which he is engaged and to use ordinary care to keep the place reasonably safe so that the employee may not be exposed to danger. He is not an insurer of the safety of the employee, the measure of his obligation being to use ordinary care in seeing that the place of work is safe in the first instance and to employ the same degree of care to keep it such.'

"And in *Duffy* v. *Hobbs, Wall & Co.,* 166 Cal. 210 [L. R. A. 1916F, 806, 135 Pac. 1093], it is said:

" 'An employer is bound to use ordinary care to see that his employees have a safe place in which to work, and that the tools and appliances with which they are to work are in good condition and reasonably safe for the purposes intended. He is also bound to use ordinary care to maintain them in such condition.'

[3] "We think a rational—if, indeed, not the only— inference to be drawn from the evidence is that defendants violated this plain duty imposed by the law. The first omission was in permitting the machine to get out of order so that the rollers would not revolve. It is a fair deduction that if they had properly attended to that matter there would have been no necessity for throwing dirt upon the rollers and hence the accident would not have occurred. But beyond that, and possibly more inexcusable, was their failure to furnish some simple mechanical device for precipitating the dirt upon the rollers and their direction for the plaintiff to do the work as already stated. Appellant presents a vivid picture of the situation as follows:

" 'The two lower back rollers of the left side track were sliding. The boy walked up along the side of the moving tractor. He stooped down while walking and with his right

hand picked up a handful of loose dirt, reached in an eight-inch opening between the tractor frame and pulley boxing on the one side and the moving track and idler wheel on the other. The tractor was vibrating and lunging under power and load, the ground was an uneven grain-field and the boy's eyes must have been on his hand and work and not his footsteps. His gauntlet glove and loose jumper sleeve were in an eight-inch hole, at one side of which, and certainly not more than three or four inches from his sleeve, the three-foot idler wheel rolled under the enormous power of the tractor. On the second handful his arm was caught.'

"We think there can be no doubt that upon the showing made the question of defendants' negligence should have been submitted to the jury. The only uncertainty that could arise from the foregoing, as we view it, is as to whether the danger was not so obvious and imminent that the plaintiff should have declined to perform the work in such manner. [4] As to this, however, it is conceded that the doctrine of 'Assumed risk' does not apply in this state to cases involving injuries in agricultural employment. (*Hackelberry* v. *Sherlock Land etc. Co.*, 39 Cal. App. 764 [180 Pac. 37].) Besides, the plaintiff was a minor and was therefore not held to the same strict rule of accountability as an adult. Moreover, the jury had a right to consider his explanation as refuting any imputation of reckless indifference to his own safety, and, not having been warned of the danger, he was justified in relying upon the implied assurance contained in the specific direction of his employer to pursue the suggested method. We may add, that having specifically directed plaintiff how to do the work and having illustrated the manner in which it should be done respondents should not be heard to say that plaintiff should have disobeyed the order because it involved manifest and serious peril.

[5] "But the trial court's order was based principally upon the theory that there was no evidence to show that the negligence of defendants, if any, was the proximate cause of the injury. This is disclosed by the following quotation from the written opinion of the judge:

"'But assuming for the purpose of considering this motion for a nonsuit, that there was negligence on the part

of the defendants in permitting the track to be oiled in the manner described, can it be held, as a matter of law, that said negligence was the proximate cause of the injury to plaintiff. To do so the testimony of the plaintiff must show it to be so, for there is no other proof of any kind in the case. He testified that he was picking up dirt and dropping it on the track and when asked how his arm was caught in the idler he says, "I don't know. I either stumbled, or the idler caught my sleeve." This is the only testimony as to what caused the injury.'

"And the court concluded that it was insufficient. We think the trial judge was mistaken in this view of the case. In the first place it entirely ignores the circumstantial evidence which was persuasive enough to justify the conclusion that the negligence of defendants 'proximately' caused the injury. We have detailed the various facts surrounding the occurrence, and we may emphasize the single circumstance that the main feature of the negligence of defendants consisted in their failure to keep the machine in repair and especially to furnish a suitable contrivance for the distribution of the dirt. If they had performed their duty in that respect the accident in all probability would not have occurred. From the various facts disclosed by the evidence it was competent for the jury to find that the accident was directly due to this dereliction on the part of defendants, in other words, that it was the proximate cause of the injury. We attach no particular importance to the fact that plaintiff was uncertain as to whether he stumbled or his sleeve got caught. It is not strange that he could not be positive as to this mere incident, since his concentrated and undivided attention must be directed to the work in hand. Whether he stumbled or not, the outstanding fact remains that it could be justly inferred by the jury that if the defendants had performed their duty the sleeve would not have come into contact with the idler, and if plaintiff had stumbled, it would not have resulted in injury.

[6] "In this connection the claim is made that 'if the plaintiff stumbled it was certainly due entirely to his own fault. No claim is made by appellant and none could be made that respondents are in any wise responsible for his stumbling.' But this is one of the very things that de-

fendants were bound to anticipate and guard against on account of the probability that it would happen. This is in accordance with a well-settled rule of law that requires precaution and provision to avoid the hurtful consequence of what may reasonably be anticipated. Indeed, there are numerous authorities going to this very point. It is sufficient to refer to the note and cases cited on page 4766, volume 4, Labatt's Master and Servant (2d ed.), wherein it is stated:

" 'The fact that the immediate cause of the servant's being injured by coming in contact with machinery which should have been guarded, or of his being injured in some other way, was a slip or stumble, will not, according to the greater weight of authority, prevent the master's negligence from being considered the proximate cause of the injury.'

"In fact, if either of these circumstances, the probable stumbling or the contact of the sleeve with the wheel, might be regarded as affecting the liability of the defendants, it would be only as a debatable question of contributory negligence to be submitted to the jury under proper instructions. [7] Assuredly, upon a motion for nonsuit made solely upon the ground that there was 'no proof of any negligence on the part of the defendants in this action' neither of said circumstances could be considered as having any bearing upon the primary responsibility of defendants.

"The three cases cited by the trial judge in support of his ruling are, in our opinion, distinguishable from the one before us. In *Hansen* v. *Seattle Lumber Co.*, 31 Wash. 604 [72 Pac. 457], the plaintiff was injured in a sawmill while operating a saw used for sawing the bands with which bundles of shingles were bound. There was no evidence that the defendants therein failed to furnish any safety device that might reduce the danger of the use of the saw. In fact, the court said:

" 'The machine itself was standard and the kind in use in nearly all shingle-mills. The device called the "carriage," however, seems not to be in common use, if it was not altogether new to this machine. But it was not testified by anyone that it increased the danger of operating the saw, and it was in evidence that it greatly lessened it.'

"The boy while on the witness-stand did not attempt to give an explanation of the accident, and the court states that nowhere in the record was there anything to show what caused it. Under such circumstances it was held that the evidence was insufficient to show that the injury was caused by the negligence of the defendant. It is true the court states that there were hidden and latent dangers connected with the operation of the saw and it was the duty of the defendant to inform the plaintiff concerning them; 'and had it been shown by evidence, either direct or circumstantial, that the injury was caused by some one or more of the hidden or latent dangers which the respondent had not been warned against the appellant would be liable in damages for the injuries.' It was declared, however, that there was no such evidence. Therein the work was being done in the customary way without any more than the ordinary danger incident to such occupation and without failure on the part of the defendant to supply any reasonable safety device, and evidence was lacking of any causal connection between the supposed negligence of the defendant and the injury suffered by the plaintiff. Herein there is ground for a reasonable inference that plaintiff was required to perform an unusually hazardous task made necessary by the negligence of defendants in permitting the machine to get out of repair; that he was not supplied with a suitable contrivance with which to do the work and that, owing to this omission, he suffered the injury.

"We may add that some qualification is needed for the following statement in the Hansen case:

" 'And it is not proving his case by circumstantial evidence for the respondent to show that there were causes, for which the appellant would be liable, which could have produced the injury, without showing that it could not have been produced in any other manner, or in a manner for which the appellant would not be liable.'

"Such consideration might be addressed properly as an argument to the jury or trial judge, but it is sufficient for an appellate court to find in the evidence a foundation for a rational inference that the injury was due to the negligence of the defendant, although there might be also ground for the opinion that it may have been produced in some other manner.

"In *Cole* v. *German Sav. & Loan Soc.*, 124 Fed. 113 [63 L. R. A. 416, 59 C. C. A. 593], the injury was due to the act of a third party in pushing open the sliding door of the well of an elevator whereby the plaintiff stepped in and fell to the bottom of the well. The elevator was at an upper floor in charge of the regular operator, and the court properly held that the defendant could not be expected to foresee or reasonably anticipate the said act of the third party and that the accident was due to an independent intervening cause, although the defendant was negligent in permitting the hall to be dark, in allowing boys to ride upon the elevator and sometimes to operate it, in neglecting to provide a lock for the door and in permitting the door to stand open from one to ten inches.

"In *Buckley* v. *Gutta Percha & Rubber Co.*, 113 N. Y. 540 [21 N. E. 717], the plaintiff was operating a machine having cogs and wheels and the injury happened because he slipped and fell and instinctively threw out his hand to recover himself. The court declared that the machine was not imminently dangerous; that the hands of the plaintiff, in anything which he had to do or was doing about the machine, would not come within nine inches of the cogs where he was injured and that the falling was a mere accident from which and the accompanying injury no caution or instruction from the agents of the defendant would have saved him. The machine was also stationary in the factory and, of course under the circumstances, the defendant could not be expected to anticipate that the plaintiff would fall and throw out his hand so as to come into contact with the cogs."

The judgment is reversed.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 25, 1923.

All the Justices concurred.