[Civ. No. 4898.   Second Appellate District, Division Two.—March 1, 1928.]

WALLACE   C.   MILLER,   Appellant,   v.   WALTER   M. COOKSON et al., Respondents.

Chas. D. Swanner and Roland Thompson for Appellant.

W. F. Menton for Respondents.

HAZLETT, J., *pro tem.*—Plaintiff sued for $10,275 in damages on account of personal injuries suffered by him, resulting from the explosion of an electrical exploder. He alleges that his injuries occurred in the course of his employment by defendant Mrs. Virginia L. Cookson, as a ranch hand on her ranch.

At the close of plaintiff's case in chief, defendants moved for a nonsuit, contending that plaintiff had failed to make out a *prima facie* case, and that no neglect was shown which would attach any liability to either defendant. The court made its order granting the motion on the ground that the evidence was not sufficient to permit the case to go to the jury, and discharging the jury.

Plaintiff appeals from the order, asserting that he had made a *prima facie* case of negligence.

The evidence produced by plaintiff showed substantially the following facts:

On June 14, 1922, and for a time prior thereto plaintiff was employed by defendant Mrs. Virginia L. Cookson, on her ranch to do general ranch work, for a monthly wage and his room and board. On that date, while plaintiff was engaged in pumping water on the ranch, one Collins, a radio salesman, was installing a radio upon the ranch for demonstration purposes and without obligation on the part of defendants. Collins asked Mrs. Cookson for help in making the installation. Thereupon, as testified by Mrs. Cookson who was called on behalf of plaintiff for cross-examination: "Mr. Miller (the plaintiff) came by where we were standing and I introduced him to Mr. Collins and told him . . . he desired some help and I asked Wallace (the plaintiff) if his work was in such shape he would be able to leave it for a while, and he said as soon as he went and turned the water off . . . he would be ready to help; and he went away and he was gone probably ten minutes and came back. . . . Q. As a matter of fact, Mrs. Cookson, wasn't that your usual way in directing your help to do anything, asking them if they had their work in shape to do certain work for you? A. I always try to work with my help; I never give orders, I sometimes instruct them, but I never give orders. Q. You usually put it that way, then, similar to the way you spoke to Mr. Miller? A. Yes; I believe they are

entitled to some consideration." This testimony by Mrs. Cookson was received without objection. After plaintiff came to assist, Collins asked for a piece of brass to use as a wave plug in the installation. Mrs. Cookson produced her clock keys which were tried but did not fit, and while she was still present, plaintiff said: "I think there is something in the garage that will fit." Plaintiff then went to a wooden drawer in Mrs. Cookson's garage on her premises where she kept her automobile, which drawer contained automobile light bulbs and accessories, screws, nuts, etc., and took from the drawer a device about two inches long composed partly of brass with some wire wrapped around it. He had seen this device in the drawer as testified by him for "probably months and months," but he did not know and had not been warned by either of the defendants or by anyone else as to its nature, for what it was designed or its composition, other than as shown by its exterior. This device was tried by Collins and was found to be too large, whereupon plaintiff said he would file it down. He then commenced to use a file upon it when it exploded in his hand, causing him personal injuries including a very serious injury to his left eye. The injury to his eye caused it to permanently· lose the most of its power of sight, and to be a menace to his other eye. The injuries prevented him from working for ten weeks, and caused him pain and suffering, and to incur doctor's and medicine bills. The device was known as an "electrical exploder," and was designed to be exploded by means of a current of electricity, and thereby to discharge dynamite. It was filled with fulminate of mercury and was very treacherous and liable to be exploded if filed or dropped or struck with a hammer. Dynamite had been used by plaintiff on the ranch in the course of his employment and he had used dynamite prior thereto for about a month, in the mines, but he had never used such an exploder. The ranch was not wired for electricity, but the electrical exploder could have been discharged by a current from an ordinary automobile storage battery. The assistance plaintiff gave Collins was during his regular working hours, for which Mrs. Cookson paid him. In fact, she paid his wages for six days thereafter.

The rules governing the review of an order on motion for a nonsuit have been well settled.

■ The motion admits the truth of plaintiff's evidence, and every inference of fact that can be legitimately drawn from it, and the evidence should be interpreted most strongly against the defendant. (*Elder* v. *Rose,* 63 Cal. App. 545, 550 [219 Pac. 74].) If but one conclusion can reasonably be reached from the evidence, it is a question of law for the court. (*Southern Pacific Land Co.* v. *Dickerson,* 188 Cal. 113 [204 Pac. 576]; *Bush* v. *Weed Lumber Co.,* 55 Cal. App. 588, 590 [204 Pac. 24]; and cases cited.) ■ If there is any evidence tending to sustain the action, the nonsuit should be denied without passing on the sufficiency of the evidence whether the court believed it to be true or not, and, where a conflict appears, some of which tends to support plaintiff's case, and the conceded facts are such that reasonable minds might differ as to whether or not one was negligent, the question is one of fact for the jury. (*In re Estate of Daly,* 15 Cal. App. 329, 331 [114 Pac. 787]; *Seller* v. *Market Street Ry. Co.,* 139 Cal. 268, 271 [72 Pac. 1006]; *Davis* v. *Crump,* 162 Cal. 513, 515 [123 Pac. 294]; *Oles* v. *Kahn Bros.,* 81 Cal. App. 76 [253 Pac. 158].) But if the only inference that could be drawn from the evidence by reasonable men is that plaintiff was guilty of negligence contributing directly to his injuries, a nonsuit should be granted. (*Vinson* v. *Los Angeles Pacific R. R. Co.,* 147 Cal. 479, 489 [82 Pac. 53]; *Payne* v. *Oakland Traction Co.,* 15 Cal. App. 127, 137 [113 Pac. 1074].)

■ Respondents contend that the evidence shows that at the time plaintiff's injuries occurred the relation of master and servant did not exist between plaintiff and defendants; and that plaintiff was guilty of negligence which contributed proximately to his injuries, and therefore that the nonsuit was properly granted.

The evidence received in this case does not raise the presumption of negligence on the part of plaintiff.

Plaintiff did not assist Collins of his own volition, but proceeded in compliance with Mrs. Cookson's request made by her in the manner she usually used in directing the work of her employees. ■ It was not necessary for him to show that the directions given by her were of a formally imperative character. (See *Stephens* v. *Hannibal & St. J. R. Co.,* 96 Mo. 207 [9 Am. St. Rep. 336, 9 S. W. 589].) "An order need not be in set words, but may be inferred

from any words or acts, one or both, which reasonably justify an inference of such order.'' (*Republic Iron & Steel Co.* v. *Williams,* 168 Ala. 612–626 [53 South. 76, 80]. See, also, *Cumberland Tel. & Tel. Co.* v. *Graves, Admx.,* 31 Ky. Law Rep. 972 [104 S. W. 356].) ▇ When one person is employed by another, he undertakes to obey all lawful orders, and the servant is not to be imputed any blame by yielding obedience. (*Chicago & Northwestern Ry. Co.* v. *Bayfield,* 37 Mich. 205, 209, 210, Cooley, C. J.)

It appears that plaintiff proceeded to assist Collins as directed by Mrs. Cookson; that what he did was done on her time and upon her ranch; that both Mrs. Cookson and plaintiff endeavored to find a piece of brass which Collins might use as a wave plug; and that Mrs. Cookson was present when plaintiff said he knew of something in her garage which might fit, and when he went to get it. It does not appear that the assistance given by plaintiff to Collins was beyond the scope of his employment or duty as the servant of Mrs. Cookson.

The court should have assumed that he was still acting for Mrs. Cookson.

As plaintiff's services were loaned to Collins, if plaintiff procured the electrical exploder solely pursuant to Collins' request, and was in no manner under the directions or control of Mrs. Cookson, the general rule announced in *Hardy* v. *Shedden Co.,* 78 Fed. 610 [47 U. S. App. 362, 37 L. R. A. 33, and note] and 39 Cor. Jur., 36, might apply in this case, to wit:

When the service of a general servant of one person is loaned to another, he may become the servant of the other by submitting himself solely to the direction and control of the other with respect to a particular piece of work.

However, under the circumstances disclosed in this case, that rule does not apply here. The evidence was such that, in ruling upon the motion for a nonsuit, the court could and should have legitimately inferred and concluded that plaintiff was acting directly under instructions from Mrs. Cookson when he endeavored to find the desired piece of brass and to make it fit. In the light of the foregoing the question of intervening cause is not involved in this case.

Respondents also contend that the trial court was justified in concluding from the evidence that neither of them

was responsible for the presence of the electrical exploder.

Dynamite had been used on the ranch and the exploder was found by plaintiff exposed in a drawer in Mrs. Cookson's garage on her premises which contained miscellaneous small metal articles; it was not inclosed in any container, and it had been seen there by plaintiff during some months before the explosion occurred.

The statute of this state relating to the care and storage of explosives is very definite.

Section 2 of "An act relating to explosives, etc.," adopted March 21, 1911, page 391, as amended, Act 2432, Deering's General Laws, provides that: "Except only at an explosive manufacturing plant, no person shall have, keep or store . . . any explosive, unless such explosives are completely inclosed and encased in tight metal, wooden or fibre containers, . . . and shall be kept and stored in a magazine. . . . " Section 3 of the same act provides in effect that blasting caps or other detonating, or fulminating caps or detonators, or electric fuzees shall be kept and stored in a magazine separate and apart from other explosives and at least 100 feet from any other structure, and shall have conspicuously posted thereon the words "magazine," "explosives," "dangerous," in letters not less than six inches high.

The electrical exploder certainly was such an "explosive" and "detonator" as defined in that act, and if defendants were responsible for its presence they violated the act in keeping it where it was found, and were guilty of a misdemeanor.

Our courts have held that "When a thing which caused the injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if one having such control uses proper care, it affords reasonable evidence, in the absence of explanation, that the injury arose from defendant's want of care." (*Koskela* v. *Albion Lumber Co.*, 25 Cal. App. 12, 20 [142 Pac. 851, 855] and cases cited.)

Where a party was injured by the explosion of a dynamite cap, and it was clearly established that defendant used dynamite, and the dynamite cap was found on the premises by the injured party who was there by permission of the defendant, the presumption arose that the defendant was

guilty of actionable negligence, and a nonsuit is not proper, although the possibility of an accident might arise on the evidence. The injured party "is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant, and resulting injury to himself. . . . Ordinary care requires that such dangerous instrumentalities should be cared for with the utmost caution." (*Southwest Cotton Co.* v. *Clements*, 25 Ariz. 124, 132, 134 [213 Pac. 1005, 1008, 1009].) See, also, *Elder* v. *Rose, supra; Boin* v. *Spreckels Sugar Co.*, 155 Cal. 612, 617 et seq. [102 Pac. 937].)

"If actual injury result from the keeping of gunpowder, the person keeping it will be liable therefor, even though the explosion is not chargeable to his personal negligence." (*Fisher* v. *Western Fuse etc. Co.*, 12 Cal. App. 739, 747 [108 Pac. 659, 663]); and the presumption of negligence arises by reason of the explosion. (*Judson* v. *Giant Powder Co.*, 107 Cal. 549, 560-562 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020].)

When explosives are kept in a manner in violation of a city ordinance and an explosion occurs, a case of *prima facie* negligence is made which must be rebutted by the defendant. (*Rathbun* v. *White*, 157 Cal. 248, 255 [107 Pac. 309].) A land owner is liable to a licensee going on his land if he recklessly exposes him to danger, and one using or handling dangerous articles does so at his peril and must respond in damages for injuries caused the licensee resulting from such exposure. (*Means* v. *Southern California Ry. Co.*, 144 Cal. 473, 480, 481 [1 Ann. Cas. 206, 77 Pac. 1001].)

The servant may always require the master to respond for injuries resulting from the master's personal negligence. Cases of this sort arise (as in this case), where the master exposes the servant to risk of which he is ignorant. (*Chicago & Northwestern Ry. Co.* v. *Bayfield, supra.*)

The presumption that Mrs. Cookson was guilty of negligence which contributed proximately to plaintiff's injuries should have been resolved by the trial court in favor of plaintiff.

■ Questions which arise under the evidence whether the plaintiff is chargeable with knowledge of special danger which might be encountered in pursuing his work as a servant or in doing an act he has a right to perform, whether

he should be charged with negligence, and whether he assumed the risks resulting, are questions of fact and are for the jury (*Boin* v. *Spreckels Sugar Co.*, 155 Cal. 617 [102 Pac. 939]; *Southwest Cotton Co.* v. *Clements, supra*); unless plaintiff's evidence discloses that he could have avoided the accident by the exercise of reasonable care. (*Payne* v. *Oakland Traction Co., supra.*) In this case the evidence does not show that plaintiff failed to use reasonable care.

The order granting a nonsuit is reversed.

Craig, Acting P. J., and Thompson, J., concurred.