[Civ. No. 12520.    First Dist., Div. One.    May 1, 1944.]

EUGENE STOCKWELL, Appellant, v. THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY et al., Respondents.

198

J. T. Blalock and Raymond G. Wilkins for Appellant.

Campbell, Hayes & Custer for Respondents.

KNIGHT, J.—The plaintiff, Eugene Stockwell, eighteen years of age, was enrolled as a student at Stanford University in the freshman class, and while on the university campus sustained personal injuries resulting in the loss of his right eye. Alleging that his injuries were proximately caused by the negligence of the university in failing to use reasonable care in maintaining its premises in a safe condition, he brought this action to recover damages for the loss of his eye. The cause came on for trial before a jury, but when plaintiff rested his case the trial court granted a nonsuit. From the judgment of dismissal entered thereon plaintiff appeals.

The circumstances under which plaintiff was injured are not disputed. Once a year, in accordance with an established custom of the university, all classes are dismissed and the students are requested and expected to go over to the grounds surrounding Stanford Convalescent Home, located on the campus and operated by the university, to help clean up the grounds, after which a barbecue is held. On May 4, 1938, plaintiff was one of some two thousand other students who

participated in that activity, and toward the end of the afternoon they started home. Plaintiff was riding with several other students in the open body of a small made-over pick-up truck, and was facing the rear of the truck. They were traveling in a line of cars on the roadway running along San Francisquito Creek, which separates the campus from the town of Menlo Park. When they were about half way between the convalescent home and the main State Highway 101, or about 250 yards from the highway, and while still on the university campus, plaintiff was struck in the right eye by a bullet fired from a BB gun. Plaintiff and those riding with him did not realize at first the severity of plaintiff's injuries, but he was driven at once to the campus hospital where he was treated by a doctor, and it was ascertained that the bullet had penetrated and lodged in the eyeball, destroying the eye. He remained there overnight and the next day was removed to the Stanford Hospital in San Francisco where X-rays were taken and the bullet was extracted from the eyeball. Some time afterwards it became necessary to remove the eyeball.

Neither plaintiff nor any of those riding with him in the truck saw who fired the shot, but the student driving the car directly behind the one in which plaintiff was riding, named Bernard Kane, saw plaintiff suddenly "double up and clutch his face over his eye" and Kane then looked to the side and saw two boys standing about 20 feet from the roadway in the low bushes, within the university grounds, and one of them had a BB gun. On account of the heavy traffic Kane was unable to stop his car at that point, but as soon as he reached the state highway he stopped, ran back and overtook the boys, and told them to get off the campus; and the boys ran down into the creek bed. He did not obtain their names because he did not know at that time that plaintiff had been badly hurt. Consequently the identity of the boy who had the BB gun was never ascertained. He is referred to in the record as Richard Roe.

Plaintiff was admittedly an invitee on the premises. He was a student at the university, and had paid the regular tuition fees required. At the time of the injury he was attending an annual function authorized by the university; the place where the injury occurred was upon the university's premises, and it occurred at a place where plaintiff was expected and invited to be.  The general rule is

that "An owner in occupation of the premises violates his duty to an invitee when he negligently allows conditions to exist on the property which imperil the safety of persons upon the premises. For such violation he is responsible in damages to the injured person . . ." (38 Am.Jur. p. 756.) In other words, as said in 19 Cal.Jur. page 618-9: "Not only must an owner of land or a proprietor of premises abstain from willfully injuring an invitee, but he owes such person the duty of maintaining his property in a safe condition, and of exercising reasonable care in protecting the invitee from injury through his negligence. . . . The question whether reasonable care has been used in the maintenance of premises is for the jury. . . ."

In the present case plaintiff produced evidence to the effect that although the university campus is officially declared a game refuge and that signs are displayed at numerous places forbidding hunting and the possession of guns, for two years or more preceding the day on which plaintiff was injured there had been a promiscuous use, on the campus and particularly along San Francisquito Creek, of BB guns and to some extent small rifles by young boys and some students, and that this was well known to those charged with the responsibility for the safe condition of the university grounds. He also produced evidence which he claimed was legally sufficient to support the fair inference that under the existing circumstances the university failed to exercise reasonable care to protect its students from the danger of being injured by the use of BB guns, and that this was especially true on this particular day when it knew that in response to its request a large number of students would be required necessarily to travel back and forth over this very road in order to participate in this college activity. Plaintiff contends, therefore, that in view of such evidence showing the existence of the above conditions, the question of negligence on the part of the university was not one of law to be determined by the court, but was one of fact which he was entitled to have submitted to and passed upon by the jury. It is our opinion that plaintiff's contention must be sustained.

The often quoted rule defining the power of a trial court to grant a nonsuit is: "A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is

legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given.' [Citing numerous cases.] Unless it can be said as a matter of law that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury." (*Estate of Flood*, 217 Cal. 763 [21 P.2d 579]; *Estate of Lances*, 216 Cal. 397 [14 P.2d 768].)

■ The same doctrine relating to evidentiary matters governs a reviewing court in the consideration and determination of an appeal from a judgment of nonsuit. (*Gove* v. *Lakeshore Homes Assn.*, 54 Cal.App.2d 155 [128 P.2d 716]; *Montgomery* v. *Nelson*, 211 Cal. 497 [295 P. 1034]; *Harper* v. *Northwestern Pac. R. Co.*, 34 Cal.App.2d 451 [93 P.2d 821].) In the determination of such an appeal the reviewing court is not permitted to argue inconsistencies in the evidence. (*Perkins* v. *Maiden*, 41 Cal.App.2d 243 [106 P.2d 232].) It must construe the evidence as strongly as possible in favor of a plaintiff, since he is entitled to a judgment on the merits if there is any substantial evidence in his favor. (*Cain* v. *Marquez*, 31 Cal.App.2d 430 [88 P.2d 200].) Moreover, it must disregard all evidence in conflict with that in plaintiff's favor. (*Birch* v. *County of Orange*, 186 Cal. 736 [200 P. 647].) Every favorable inference fairly deducible from the evidence and every favorable presumption arising therefrom must be considered as facts established by plaintiff (*Hall* v. *Barber Door Co.*, 218 Cal. 412 [23 P.2d 279]; *Harper* v. *Northwestern Pac. R. Co.*, *supra*), and where the evidence is susceptible of two constructions or if several inferences reasonably may be drawn therefrom, the reviewing court must take the view most favorable to plaintiff. (*Southern Cal. Tel. Co.* v. *Los Angeles*, 45 Cal.App.2d 111 [113 P. 2d 773].)

■ So construing the evidence in the present case, among the facts established thereby were these: Police officers employed by the university to patrol the campus admitted having known that for several years past boys were accus▸

tomed to come upon the grounds to shoot BB guns and rifles; that trails up and along the banks of San Francisquito Creek had been made and used by them to come upon the grounds; that on numerous occasions the police officers had seen boys along the creek with BB guns; that they were not always able to catch the boys, and that on some occasions when they, did catch them their guns were confiscated. In this connection one officer testified that there was some question as to whether it was legal to confiscate the guns, so on some occasions they would temporarily take possession of the guns and advise the boys to have their parents call for them; and the parents were told at that time that if the boys were again found in possession of a gun on the grounds they would take legal action; other times the police would tell the boys that they would have to take their guns home and not transport them through the university grounds. Plaintiff also produced several witnesses who testified that they had many times seen boys on the grounds with BB guns and that they had never seen the boys chased off. One boy testified that during the year prior to the accident he and other boys came upon the university grounds two or three times a month with their guns and were never chased off. Students at the university were produced as witnesses who testified that they had seen BB guns used on the campus, and one witness whose father was an officer of the university testified that he had used a BB gun on the campus; that his father instructed him not to shoot game or birds on the campus, but did not tell him he could not use the gun on the campus.

The campus covers some 9,000 acres, and the university had a student population of between 4,000 and 5,000, plus a large staff of employees; and at the time plaintiff was injured the university had in its employ seven or eight police officers. However, only two of them, besides the chief of police, were on duty during the daytime, and those two were not on duty during the same hours. The other officers came on duty at night. Although some 2,000 students were gathered at the convalescent home on this particular day neither of the two officers who were assigned to duty that day were there present, nor at or near the scene of the shooting. One of them was not on duty at all; it was his day off; and the other was not sure whether he came on duty at 2:00 or 4:00 o'clock in the afternoon, and he did not remember whether he had been around the convalescent home at all that day nor whether he was

present during the barbecue. He testified that ordinarily on this annual occasion he would go through the convalescent home grounds only after the roads were cleared to see if the barricades had been removed. At any rate, he knew nothing of the injury to plaintiff until some two weeks later. At athletic functions the board of athletic control employed a number of students to do police work, and some were present performing that duty at the convalescent home, but their duties consisted chiefly in directing traffic and aiding in parking cars.

As said in the case of *Hennesey* v. *Bingham,* 125 Cal. 627 [58 P. 200] : "Negligence is the ultimate fact to be inferred from many probative facts. The inference is within the province of the jury, even when the facts are undisputed. When different conclusions as to negligence can reasonably be drawn from the admitted facts, it is not for the court to instruct the jury as to which is to be adopted by them." Again, in *Souza* v. *Underwriters' Fire Patrol,* 116 Cal.App. 13 [2 P. 2d 200], wherein a judgment of nonsuit was reversed, the court said that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be drawn from the evidence. Moreover, as heretofore stated, the question of whether reasonable care has been used by an owner in the maintenance of the premises is for the jury (16 Cal.Jur. p. 619) and it is the duty of the trial court on motion for nonsuit, if there is any doubt, to let the case go to the jury. (*Bush* v. *Weed Lumber Co.,* 55 Cal.App. 588 [204 P. 24] ; *Elder* v. *Rose,* 63 Cal.App. 545 [219 P. 74].)

Applying the foregoing legal rules to the factual situation presented, it becomes apparent not only that the question of whether under all the circumstances shown the university exercised reasonable care to protect its students from the perils of the promiscuous use on the premises of BB guns was one of fact which plaintiff was entitled to have submitted to and determined by the jury, but also that if a verdict favorable to plaintiff had been returned, it would not have been lacking in evidentiary support; and that therefore the court was not justified in granting the nonsuit.

There is no disputing the legal principle upon which defendants seem strongly to rely, that a person invited upon the premises of another may recover damages from such owner for injuries received owing to the dangerous condi-

tion of the premises known to the owner and not known to the person so injured, but that such owner is not bound to keep his premises absolutely safe. (*Dingman* v. *A. F. Mattock Co.*, 15 Cal.2d 622 [104 P.2d 26]; *Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 P. 793].) However, there is nothing in the statement of such legal principle indicating that the question of the owner's knowledge of the dangerous condition is one of law. Here as pointed out the evidence affirmatively shows knowledge on the part of the university of the promiscuous use of BB guns on the premises, and it was doubtless a question of fact as to whether the promiscuous use thereof under the conditions shown by the evidence constituted a dangerous condition against which the university negligently failed to protect its invitees.

■ Defendants contend that even assuming they were negligent, there was no evidence showing that any of the alleged acts of negligence was the proximate cause of plaintiff's injury. In this regard they argue that plaintiff's injury was due entirely to an intervening cause—the wilful and malicious act of the third party producing the injury—and that no amount of adequate policing could have prevented the casualty. The answer to this contention is that there is no evidence showing any wilful or malicious act. To so infer would be to indulge in mere guess and speculation; and since on motion for nonsuit and on an appeal from a judgment of nonsuit all reasonable inferences must be drawn in plaintiff's favor, it would be violative of plaintiff's rights here to infer that the act was wilful or malicious. The present case is essentially different from *Reithardt* v. *Board of Education*, 43 Cal.App.2d 629 [111 P.2d 440], relied on by defendants. That was a case of an isolated act, and as therein held, no danger was present except in such an instance as occurred, the wilful and deliberate act of another student. Here evidence was produced showing that there existed on defendants' premises a continuous and promiscuous use of BB guns and rifles by trespassing boys, and one of the officers testified that he realized that this created a dangerous condition. Moreover, in the Reithardt case, it was conceded that the particular act causing the injury was wilful and deliberate.

■ Then, again, as to the question of proximate cause, where it is claimed that an intervening cause has broken the chain of causation, it has been repeatedly held that such a

question is one of fact for the jury. The general rule is stated in *Springer* v. *Sodestrom*, 54 Cal.App.2d 704 [129 P.2d 499], as follows: ". . . the question whether or not an intervening act of negligence breaks the chain of causation so as to make the original negligence a remote cause rather than a proximate cause of an injury, is always a question of fact to be decided by the jury. (*Pastene* v. *Adams*, 49 Cal. 87; *Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 499 [111 P. 534, 139 Am.St.Rep. 134, 31 L.R.A.N.S. 559]; *Katz* v. *Helbing*, 205 Cal. 629 [271 P. 1062, 62 A.L.R. 825]; *Royal Indemnity Co.* v. *Midland Counties Public Ser. Corp.*, 42 Cal.App. 628 [183 P. 960]; *Polloni* v. *Ryland*, 28 Cal. App. 51 [151 P. 296]; *Rae* v. *California Equipment Co.*, 12 Cal.2d 563 [86 P.2d 352]; *Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594 [110 P.2d 1044]; *Fennessey* v. *Pacific Gas & Electric Co.*, 20 Cal.2d 141 [124 P.2d 51].)" A considerable portion of the last cited case is quoted in the Springer case, to the same effect.

Many other authorities could be cited on this point, among which is *Rovegno* v. *San Jose K. of C. Hall Assn.*, 108 Cal. App. 591 [291 P. 848]. There plaintiff's son was drowned in a swimming pool. The only negligence alleged was the failure of the defendants to provide a life guard. The defendants urged that even if such a guard had been present there was no showing that the boy's life would have been saved. The trial court, as in the present case, granted a nonsuit, and the appellate court reversed the judgment, stating that "Just what would have happened had a life guard been present is, of course, not capable of direct proof. It is largely a matter of speculation or of inference. Even so, it has been held that the question is one for the jury and not for the court." Later on the court stated: "From the foregoing considerations we feel justified in holding that it was for the jury, rather than the trial court, to pass on the question of proximate cause and to determine whether the arrangements made by respondents were reasonably adapted to the end of protecting the lives of the association's members and guests and were such as ordinary prudent persons, situated as respondents were, would have made." See, also, *Lindsey* v. *De Vaux*, 50 Cal.App.2d 445 [123 P.2d 144], where the Rovegno case is cited and quoted from with approval as the basis of the decision there on the question of proximate cause. Such was the situation here. Just what would have

happened if more police had been on duty that day, or if a police officer had been assigned to patrol the road which the students were to use leaving the barbecue, where it was well known boys were often present with BB guns, was a matter of inference, and was not susceptible of direct proof. The real question in the case was whether under the circumstances there was adequate and reasonable police protection on the grounds or at the place of the shooting, and this was an issue for the determination of the jury as a matter of fact, and not for the court as a matter of law. To hold otherwise would amount to a determination that defendants' acts and conduct constituted the exercise of reasonable care as a matter of law, and in our opinion the evidence does not justify such a determination.

The remarks made by the trial court in granting the nonsuit indicate that its refusal to allow the case to be submitted to the determination of the jury was based largely upon the conclusion that because of differentiating facts, a clear distinction was to be drawn between the present case and those cited to the court by the plaintiff; and on this appeal both parties have cited numerous cases, many from foreign jurisdictions, in support of the respective contentions made by them concerning the main issue as to whether the university exercised reasonable care in maintaining its premises in a safe condition for those it had invited to come upon them. Since, however, the determination of an issue of that kind depends upon the peculiar facts and circumstances surrounding each individual case, it cannot be said that any of the cases cited by either party, nor for that matter any of the passages quoted by defendants from the Restatement of the Law of Torts, are here controlling. Furthermore, it must be remembered that the province of the trial court in ruling on the motion for nonsuit, and this court on appeal, was and is to determine only whether the evidence adduced at the trial, taken as true, was sufficient to present a debatable question as to whether the university had exercised reasonable care in maintaining its premises in a safe condition for those it had invited to come upon it. If it was, then plaintiff was entitled to have that issue submitted to the determination of the jury. In this connection it may be stated that in only two of the cases cited by defendants did the trial court refuse to allow that question to be submitted to the jury. Both were cases from foreign jurisdictions; and there is no

similarity of facts between those cases and the present one. The others involved appeals from judgments based on verdicts, or rulings on demurrer. For the foregoing reasons we have not deemed it necessary to enter upon a detailed discussion of the numerous cases thus cited.

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied May 31, 1944, and respondents' petition for a hearing by the Supreme Court was denied June 29, 1944. Shenk, J., Edmonds, J., and Traynor, J., voted for a hearing.